KELLY, Judge:
 

 Appellant, Carlos Mercado, appeals the judgment of sentence imposed after he was convicted of third degree murder
 
 [1]
 
 two counts of aggravated assault
 
 [2]
 
 , possession of an instrument of crime
 
 [3]
 
 , and firearms not to be carried without a license
 
 [4]
 
 . We vacate both convictions for aggravated assault and affirm the judgment of sentence
 
 [5]
 
 .
 

 The trial court summarizes the facts as follows:
 

 [On April 2, 1992] [t]he victim, a Hispanic male, Victor Martinez-Soto, was shot once in the upper left portion of his
 
 *234
 
 chest at around 10:00 a.m. [at the Willow Hotel in Reading, Pennsylvania.] The victim died approximately one hour later in Community General Hospital of exsanguination, due to the gun shot wound which was listed as the primary cause of death. The Reading Bureau of Police received information through confidential police informants and witnesses, that a young Hispanic man with two teardrop tattoos on his face might have been involved in the shooting.
 

 On April 17, 1992, Officers Ziemba and Berrios of the Reading Bureau of Police, were detailed to the Uni-Mart store at Tenth and Chestnut Streets, in the City of Reading, regarding a Hispanic male known to have teardrop tattoos on his face. Officer Berrios asked Mercado for his name, date of birth and inquired about Mercado’s face. Officer Berrios testified that the man identified himself as Mike Cruz and gave a date of birth which the officer could not recollect and identified the mark on his face as an acne pimple. Officer Berrios testified that he rubbed the man’s face to reveal two teardrop tattoos. Officer Berrios believed that this was the man that Criminal Investigator Dennis Soja wanted to question regarding the Willow Hotel shooting. Officer Berrios told the defendant that he was being taken into the turnkey’s office because he had no identification and because he believed that the man was someone other than Mike Cruz. (N.T. Vol III, 6/16/93 pp. 591-600).
 

 Officer Berrios testified that defendant was not placed under arrest, was free to leave and advised him of this, but told him that police policy demanded that he be hand-cuffed for the trip in the car to the turn key [sic] office at City Hall. Officer Berrios testified that the defendant agreed to go with him to City Hall and that when he learned the defendant’s real name, from other police officer’s, [sic] he read Mercado his rights from his “Miranda” card. Officer Berrios testified that defendant acknowledged that he understand [sic] his rights, did not desire an attorney and did not desire to make a statement. After this, Officer Berrios
 
 *235
 
 kept Mercado at City Hall to speak to C.I. Soja, who was called into to [sic] interview Mercado.
 

 C.I. Soja testified that when he arrived at City Hall, he found the defendant unhand-cuffed, awaiting his arrival in a conference room. Soja inquired of Officers Berrios and Ziemba, as to whether the defendant had been searched and was told that he had been searched[
 
 6
 
 ] Mercado was then questioned regarding the Willow Hotel incident. C.I. Soja testified that the defendant denied any knowledge of the incident or even the whereabouts of the Willow Hotel. Mercado was then placed under arrest for possession of controlled substances, both heroin and marijuana and jailed on those charges, in lieu of $100,000.00 bail.
 

 On May 5, 1992, Jose Trinidad gave a statement to the police stating that he was in the Willow Hotel and witnessed a man with teardrop tattoos, shoot the victim. (N.T.Vol. Ill, 6/17/93 pp. 699-708).
 

 On May 8, 1992, C.I. Soja arrested Mercado and charged him with violations of the Crimes Code of Criminal Homicide, First Degree Murder, Third Degree Murder, Voluntary Manslaughter, two counts of Aggravated Assault, Possessing Instruments of Crime, Firearms not to be Carried with [sic] a License and Criminal Conspiracy to Commit each of the above offenses. Mercado was arraigned and committed to Berks County Prison without bail, as the District Attorney’s Office indicated on the record that the Commonwealth would seek the death penalty.
 

 Preliminary hearings were scheduled for July 16, 1992, August 17, 1992 and September 8, 1992, but were not held due to Commonwealth witnesses failing to appear on those dates, as well as problems in appointing counsel for Mercado and co-defendant, Lluberes, due to conflicts of interest within the Public Defender’s Office and among other Berks County conflict counsel. Attorney Maurice Stone, who was
 
 *236
 
 appointed to represent Mercado in August of 1992, filed a petition for Writ of Habeas Corpus on September 9, 1992, a hearing was held thereon in lieu of a preliminary hearing before this court on September 11,1992. After the hearing, this Court held that the evidence was sufficient to bind Mercado over for court on all charges.
 

 Attorney Stone filed an extensive omnibus pretrial motion and a hearing was scheduled for December 4,1992. On that date, this court appointed Larry Totenberg, M.D. to examine the defendant to determine his competency to stand trial, his criminal responsibility and the existence of any mitigating factors to be considered on the issue of the death penalty. This court directed that Dr. Rotenberg’s report be provided to both counsel for the defense and the Commonwealth and to the court in the absence of an objection from defense counsel.
 

 While the pretrial motions were pending, conflicts arose which necessitated the withdrawal of the appearance of Maurice Stone, Esquire and Paul Herbein, Esquire, as attorneys for Mercado. Anthony Rearden, III, Esquire and John J. Grenko, Esquire, were appointed as co-counsel for Mercado on December 22, 1992. Attorneys Grenko and Rearden filed an Amended Omnibus Pretrial Motion raising a change of venue or venire, constitutionality of the death penalty and a bill of particulars, and issues revolving around what had occurred on April 17, 1992. A hearing was held on defendant’s amended pretrial motion on February 2, 1993. On February 22, 1993, this Court issued an Opinion and Order, denying the defendant’s request for change of venue or venire and denied in part the defendant’s request for a bill of particulars and denied the defendant’s request to suppress evidence.
 

 The Commonwealth withdrew its notice of intent to seek the death penalty on March 9, 1993.
 

 Trial in this matter commenced on June 7, 1993, with selection of twelve jurors and four alternates. Motions were [sic] in limine were resolved. Immediately prior to the
 
 *237
 
 commencement of trial, Mercado presented a recusal motion, which was denied.
 

 The testimony in this case included testimony of Francisco Rosa, who was the only Commonwealth witness who implicated Lluberes in the alleged conspiracy. (N.T.Vol. II, 6/15/93 pp. 272-410). Francisco Rosa testified that Soto was killed after an April 2, 1992 early morning dispute over money owed by Soto to one Victor Manuel Lluberes, who Rosa testified had given a pistol to Carlos Mercado after the early morning dispute and immediately thereafter, provided Mercado with a ride to the Willow Hotel. Victor Lluberes was tried as a co-defendant with Mercado and was acquitted of all charges.
 

 Another witness, Jose Trinidad, testified that he was present on the third floor stairwell of the Willow Hotel at the time of the shooting of Soto. (N.T.Vol. Ill, 6/16-17/93 pp. 463-589). Patricia Foust also testified for the Commonwealth that she had heard Mercado and Soto immediately prior to the shooting, but their discussion was not so loud or angry as to cause her concern, as she was the assistant manager of the Willow Hotel. (N.T.Vol. Ill, 6/17/93 pp. 640-698). The Commonwealth presented testimony of Melissa Nieves, the girlfriend of Mercado, who testified that Mercado told her that the shooting was an accident. (N.T.Vol. II, 6/15/93 pp. 240-269).
 

 Dr. Neil Hoffman, who performed the autopsy, testified regarding the trajectory of the bullet through Soto’s chest, the lacerations found on the decedent’s body and that the decedent was under the influence of controlled substance at the time of his death. Dr. Hoffman could not definitely establish whether the fatal wound was caused by a .22 or .32 or .38 or other caliber projectile. (N.T. Vol. I, 6/11/93 pp. 100-156).
 

 The Commonwealth did not offer the alleged murder weapon into evidence, but did call Officer David Wright, an evidence technician who described a lead projectile found on the scene and various items of clothing that were torn in various places consistent with the suggestion that Soto had
 
 *238
 
 been in a scuffle with someone shortly before his death. (N.T.Vol. I, 6/11/93 pp. 162-188).
 

 Defendant, Carlos Mercado, presented evidence by a private investigator, Fred Yerger, who described the inside layout of the Willow Hotel as he observed it shortly before the time of the trial. (N.T.Vol. IV-V, 6/18/93, 6/21/93 pp. 843-891). Patrick McCauley, who is an adult probation office supervisor, explained the sentencing guidelines and the sentence received by Francisco Rosa, a Commonwealth witness. (N.T.Vol. V, 6/21/93 pp. 891-954).
 

 Both the Commonwealth and the defense submitted requested points for charge which were reviewed prior to the closing arguments of counsel. Appropriate objections were made to preserve the issue of the jury charge.
 

 The jury returned a verdict of guilty on third degree murder, two counts of aggravated assault, possession of instruments of crime and firearms not to be carried without a license. Defendant was acquitted on all other charges, including all the criminal conspiracy charges.
 

 Trial Court Opinion, November 23, 1993 at 1-7 (footnote omitted).
 

 Appellant filed post-verdict motions which were denied. This appeal follows.
 

 Appellant raises the following issues on appeal:
 

 1. DID THE LEARNED TRIAL JUDGE ERR IN HER INSTRUCTION TO THE JURY PURSUANT TO COMMONWEALTH REQUESTED POINT FOR CHARGE NUMBER 5 AND PURSUANT TO 18 PA. C.S.A. SECTIONS 6102 AND 6104 BY USING LANGUAGE WHICH VIOLATED THE DEFENDANT’S DUE PROCESS RIGHTS UNDER THE UNITED STATES AND PENNSYLVANIA CONSTITUTIONS BY CREATING AN INFERENCE OF INTENT TO COMMIT A CRIME OF VIOLENCE FROM ABSENCE OF A LICENSE TO CARRY A FIREARM?
 

 2. DID THE LEARNED TRIAL JUDGE ERR IN DETERMINING THAT THE COMMONWEALTH’S
 
 *239
 
 CONFLICTING EVIDENCE ON THE ELEMENT OF MALICE WHICH WAS NECESSARY TO ESTABLISH THE CRIMES OF MURDER IN THE THIRD DEGREE AND AGGRAVATED ASSAULT WAS SUFFICIENT AS A MATTER OF LAW TO ALLOW THESE CHARGES TO BE SUBMITTED TO THE JURY?
 

 3. DID THE LEARNED TRIAL JUDGE ERR IN FAILING TO SUPPRESS EVIDENCE OF STATEMENTS MADE BY THE DEFENDANT TO CRIMINAL INVESTIGATOR SOJA ON APRIL 17, 1992 REGARDING THE DEFENDANT’S KNOWLEDGE REGARDING THE WILLOW HOTEL SHOOTING?
 

 4. DID THE PRIOR DEFENSE COUNSEL ERR IN FAILING TO OBJECT TO THE LEARNED TRIAL JUDGE’S ORDER THAT THE COMMONWEALTH RECEIVE A COPY OF THE PSYCHIATRIC EVALUATION DONE BY THE COURT-APPOINTED EXPERT ON THE ISSUES OF COMPETENCY TO STAND TRIAL, CRIMINAL RESPONSIBILITY AND POSSIBLE MITIGATING CIRCUMSTANCES ON THE ISSUE OF CAPITAL PUNISHMENT?
 

 5. DID THE LEARNED TRIAL JUDGE ERR IN REFUSING TO GRANT THE DEFENDANT’S REQUEST FOR A CHANGE IN VENUE OR VENIRE DESPITE A SHOWING BY DEFENDANT THAT PRE-TRIAL PUBLICITY HAMPERED HIS ABILITY TO RECEIVE A JURY OF HIS PEERS FREE FROM PREJUDICE?
 

 6. DID THE LEARNED TRIAL JUDGE ERR IN REFUSING THE DEFENDANT’S PRE-TRIAL REQUEST FOR A BILL OF PARTICULARS TO INCLUDE MORE THAN A LIST OF WITNESSES WHO MIGHT BE CALLED TO ESTABLISH AGGRAVATING CIRCUMSTANCES IN THE CASE OF A CONVICTION OF MURDER IN THE FIRST DEGREE?
 

 
 *240
 
 7. DID THE LEARNED TRIAL JUDGE ERR IN REFUSING TO RECUSE HERSELF FROM THE TRIAL OF THIS MATTER PURSUANT TO THE DEFENDANT’S REQUEST AND IN LIGHT OF THE FACT THAT THIS DEFENDANT WAS A PARTY PLAINTIFF IN A FEDERAL CIVIL SUIT WHEREIN THE TRIAL JUDGE WAS A NAMED DEFENDANT?
 

 Appellant’s Brief at 2-3.
 

 Appellant first alleges that the trial court erred when it gave a jury instruction which created a presumption of intent to commit a crime of violence. Appellant contends that his aggravated assault convictions stem from the erroneous instruction of the presumption of his intent to cause serious bodily injury to the victim and, therefore, he should receive a new trial. Appellant cites
 
 Commonwealth v. Sattazahn,
 
 428 Pa.Super. 413, 631 A.2d 597 (1993),
 
 allocatur granted,
 
 537 Pa. 639, 644 A.2d 162 (1994) in support of his argument.
 

 A person is guilty of aggravated assault if he:
 

 (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
 

 H: $ ‡ ‡ ‡ $
 

 (4) attempts to cause or intentionally or knowingly cause bodily injury to another with a deadly weapon.
 

 # sjs sH Hi
 

 18 Pa.C.S.A. § 2702(a)(1), and (4).
 

 The standard of review of trial court instructions to the jury is as follows:
 

 When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for
 
 *241
 
 its consideration.
 
 Commonwealth v. Ohle,
 
 503 Pa. 566, 582, 470 A.2d 61, 70 (1983).
 

 Commonwealth v. Prosdocimo,
 
 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990). The
 
 Prosdocimo
 
 Court further stated that “we will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision.”
 
 Id.
 
 at 154, 578 A.2d at 1276.
 

 Commonwealth v. Sattazahn, supra,
 
 was the first case in which we reviewed a trial court’s use of 18 Pa.C.S.A. § 6104 as a basis for a jury instruction. In
 
 Commonwealth v. Sattazahn, supra,
 
 the trial court instructed the jury:
 

 In the trial of a person for committing a crime of violence, and a crime of violence is defined in the law as a murder, robbery or aggravated assault, if you are satisfied, you, the jury, are satisfied beyond a reasonable doubt, that the defendant was armed with a firearm, and had no license to carry the same, this shall be evidence of his intention to commit said crimes of violence.
 

 Id.
 
 at 425-26, 631 A.2d at 603-04. In determining whether this instruction violated the appellant’s right to due process, this Court stated:
 

 Since [the presumption of innocence] is with the defendant not only at the beginning of the trial but throughout all its stages, and even while the jury is considering its verdict, it is obvious that no contrary presumption can be indulged. Hence it has been said that all presumptions independent of evidence are in favor of innocence.
 
 Watkins v. Prudential Insurance Co.,
 
 315 Pa. 497, 173 A. 644, 95 A.L.R. 869 [ (1934) ]. It is the law that in a criminal case, unlike a civil case, no binding instruction may be given in favor of the prosecution. This is true whether the evidence upon which the prosecution rests is oral or documentary and is equally true no matter how strong the proof proffered by the prosecution may be. It is because of this never-shifting burden upon the Common
 
 *242
 
 wealth to prove every essential element of the charge it makes against the defendant that it cannot logically be said that the Commonwealth has the burden to prove the presence of such element while the defendant, at the same time, has the burden of proving its absence.
 

 [Commonwealth v. Bonomo,
 
 396 Pa. 222, 229-30, 151 A.2d 441, 445-46 (1959) ]. In keeping therewith, the Supreme Court has “held that, “virtually all so-called “criminal presumptions” are really no more than permissible inferences.’ ”
 
 Commonwealth v. Mason,
 
 483 Pa. 409, 413, 397 A.2d 408, 411 (1979), (quoting
 
 Commonwealth v. DiFrancesco,
 
 [458 Pa. 188, 193 n. 3, 329 A.2d 204, 208 n. 3 (1974) ].) When dealing with a statutory presumption, “where the presumed fact comprises an element of the crime charge, the inference authorized by a presumption can
 
 never
 
 be compelled by the court.”
 
 Commonwealth v. DiFrancesco, supra.
 
 The due process clause, therefore, prevents a court from giving the Commonwealth the benefit of an instruction which, on the basis of a presumption, has the effect of relieving the prosecution from its burden of proving beyond a reasonable doubt all of the elements of the crimes charge.
 
 See Francis v. Franklin,
 
 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985);
 
 Sandstrom v. Montana,
 
 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
 

 Commonwealth v. Sattazahn, supra,
 
 428 Pa.Super. at 429-30, 631 A.2d at 605-06. This Court concluded that “the trial court, by reading the language of the statute [18 Pa.C.S.A. § 6104] without any qualifying language, let the jury believe that the presumption created by the statute was a conclusive presumption.”
 
 Id.
 
 at 430, 631 A.2d at 606. Fashioning a jury instruction according to the language of 18 Pa.C.S.A. § 6104, without qualification, is not harmless error.
 
 Id.
 

 Instantly, the trial court gave the jury the same instruction, In the trial of a person for committing a crime of violence— and a crime of violence is defined in the law as a murder, robbery or aggravated assault. If you are satisfied, you, the jury, are satisfied beyond a reasonable doubt that the defendant was armed with a firearm, as I have defined it,
 
 *243
 
 used or attempted to use this firearm and had no license to carry the same, this shall be evidence of his intention to commit said crimes of violence.
 

 N.T.Vol. 6 at 1222-23.
 

 The Commonwealth, however, argues that the instant case is distinguishable from
 
 Commonwealth v. Sattazahn, supra.
 
 Presently, despite receiving the above instruction on the presumption of intent, the jury did not find appellant guilty of first degree murder, but rather, of third degree murder. Third degree murder requires malice, not intent.
 
 Commonwealth v. Austin,
 
 394 Pa.Super. 146, 575 A.2d 141 (1990). As the jury acquitted appellant on the charge of first degree murder, which requires intent, the Commonwealth posits, therefore, that the jury did not utilize the instruction that the jury was to presume intent on the part of appellant. Thus, the Commonwealth concludes, the jury did not use the instruction which created a presumption of intent when the jury found appellant guilty on two charges of aggravated assault. Instead, the Commonwealth contends, the jury found the Commonwealth had proved that appellant had recklessly caused serious bodily injury to another, which the Commonwealth states is sufficient for aggravated assault.
 

 We note that 18 Pa.C.S.A. § 2702(a)(4), the basis for one of the aggravated assault charges, does not have the element of recklessness, but the element of intent. Therefore, the jury must have found that appellant acted intentionally.
 

 When there is a reasonable possibility that an error may have contributed to the conviction, the error is reversible.
 
 Commonwealth v. Davis,
 
 452 Pa. 171, 305 A.2d 715 (1973). Instantly, there is a reasonable possibility that the erroneous instruction of the presumption of intent contributed to the two convictions on aggravated assault. Thus, we would normally vacate the judgment of sentences for aggravated assault.
 

 However, the trial court correctly noted that the aggravated assault convictions merged with the third degree murder conviction for sentencing purposes and did not impose a judgment of sentence for either of the two aggravated assault
 
 *244
 
 convictions. Thus, we vacate the convictions on the two aggravated assault charges. The judgment of sentence for third degree murder stands because third degree murder requires malice, not intent.
 
 See Commonwealth v. Austin, supra.
 
 Hence, the third degree murder conviction was not tainted by the erroneous instruction.
 
 [7]
 

 In his statement of questions presented, appellant next contends that the Commonwealth’s conflicting testimony on the element of malice was not sufficient to establish third degree murder and aggravated assault to allow these charges to be submitted to the jury. However, in the argument section of the brief, appellant states the issue as:
 

 The conflicting Commonwealth evidence on the element of malice necessary to establish murder (third degree) and aggravated assault is insufficient to allow these verdicts to stand.
 

 Appellant’s Brief at 31. Because of our disposition of the aggravated assault charges, we will only address appellant’s challenge to the third degree murder charge.
 

 Instantly, appellant’s brief contains an argument which was not raised in his statement of questions, whether there was sufficient evidence to support a conviction of third degree murder. Thus, the question of whether there was sufficient evidence to support the third degree murder conviction is waived.
 
 See
 
 Pa.R.A.P. 2116;
 
 Commonwealth v. Leib,
 
 403 Pa.Super. 223, 588 A.2d 922 (1991),
 
 appeal denied,
 
 528 Pa. 642, 600 A.2d 194 (1991) (when an appellant fails to set forth an issue in the statement of questions, the issue is waived). Additionally, appellant fails to include in the argument section of his brief any support for the issue stated in his statement of questions.. Thus, the question of whether there was sufficient evidence to submit the issue of appellant’s guilt to the jury is waived.
 
 See
 
 Pa.R.A.P. 2119;
 
 Commonwealth v. Long,
 
 367
 
 *245
 
 Pa.Super. 190, 532 A.2d 853 (1987),
 
 appeal denied,
 
 518 Pa. 617, 541 A.2d 744 (1988). Moreover, both issues are meritless.
 

 Murder is defined as follows:
 

 § 2502. Murder
 

 (a) Murder of the first degree. — A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.
 

 (b) Murder of the second degree. — A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.
 

 (c) Murder of the third degree. — All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.
 

 18 Pa.C.S.A. § 2502(a), (b) and (c).
 

 Malice is the essential element of third degree murder.
 
 Stidham v. Millvale Sportsmen’s Club,
 
 421 Pa.Super. 548, 618 A.2d 945 (1992),
 
 alloc. denied,
 
 536 Pa. 630, 637 A.2d 290 (1993);
 
 Commonwealth v. Smouse,
 
 406 Pa.Super. 369, 594 A.2d 666 (1991);
 
 Commonwealth v. White,
 
 366 Pa.Super. 538, 531 A.2d 806 (1987),
 
 appeal denied,
 
 520 Pa. 605, 553 A.2d 967 (1988). “Legal malice exists where there is particular ill-will or where there is wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty.”
 
 Stidham v. Millvale Sportsmen’s Club, supra
 
 at 559, 618 A.2d at 951. Malice may be inferred from the use of a deadly weapon upon a vital part of the body.
 
 Id.; Commonwealth v. Pigg,
 
 391 Pa.Super. 418, 571 A.2d 438 (1990),
 
 appeal denied,
 
 525 Pa. 644, 581 A.2d 571 (1990). Further, the malice necessary to support a third degree murder conviction may also exist where the accused acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury.
 
 In Interest of Smith,
 
 396 Pa.Super. 624, 579 A.2d 889 (1990),
 
 alloc. denied,
 
 527 Pa. 610, 590 A.2d 296 (1991). Finally, malice may be inferred from all the circumstances surrounding the
 
 *246
 
 conduct of the accused.
 
 Commonwealth v. Rementer,
 
 410 Pa.Super. 9, 598 A.2d 1300 (1991),
 
 alloc. denied,
 
 533 Pa. 599, 617 A.2d 1273 (1992);
 
 Commonwealth v. Austin, supra.
 

 Because there is no argument in support of the question of whether there is sufficient evidence to submit the third degree murder charge to the jury, it is not clear if appellant is claiming that the Commonwealth failed to make a
 
 prima facie
 
 case and it was erroneous to proceed to trial with the case or whether the trial court erred in denying appellant’s request for a demurrer on the charge of third degree murder. Both contentions, however, are without merit.
 

 At the preliminary hearing stage, the Commonwealth has the burden of establishing at least
 
 prima facie
 
 that a crime has been committed and that the accused is probably the one who committed it.
 
 Commonwealth v. Wojdak,
 
 502 Pa. 359, 466 A.2d 991 (1983). The Commonwealth is not required to prove guilt beyond a reasonable doubt at the preliminary hearing.
 
 Commonwealth v. McBride,
 
 528 Pa. 153, 595 A.2d 589 (1991). However, to meet the burden of establishing a
 
 prima facie
 
 case, the Commonwealth must present evidence with respect to each of the material elements of the crime charged and to establish sufficient probable cause to warrant the belief that the accused committed the crime.
 
 Id.
 

 Commonwealth v. Neckerauer,
 
 421 Pa.Super. 255, 264, 617 A.2d 1281, 1287 (1992)
 
 (en banc). See also Commonwealth v. Jury,
 
 431 Pa.Super. 129, 636 A.2d 164 (1993). To present a
 
 prima facie
 
 case, the Commonwealth must produce evidence that, if accepted as true, would warrant the trial judge to allow the case to go to trial.
 
 Commonwealth v. Austin, supra; Commonwealth v. Lacey,
 
 344 Pa.Super. 576, 496 A.2d 1256 (1985).
 

 Instantly, a
 
 habeas corpus
 
 hearing was held in lieu of a preliminary hearing. At the hearing, the Commonwealth presented testimony that appellant was arguing with the victim. During the argument, appellant grabbed the victim and placed a gun to the victim’s body. The witness testified at
 
 *247
 
 the hearing that he heard the gun “go off’ and saw the victim lying on the floor. The victim died of exsanguination
 
 [8]
 
 due to the gun shot wound to the upper left portion of his chest.
 

 The Commonwealth presented evidence that a crime was committed and that appellant was probably the one who committed the crime. The Commonwealth presented testimony that the victim died as a result of appellant using a gun, a deadly weapon, on a vital body part, the upper left portion of the chest, of the victim. The use of a deadly weapon on a vital body part can be used to infer malice on the part of appellant.
 
 See Commonwealth v. Pigg, supra.
 
 Therefore, there was sufficient evidence to proceed to trial.
 

 When moving for a demurrer in a criminal case, the defendant admits to all the facts which the Commonwealth’s evidence tends to prove, and all inferences reasonably deducible therefrom.
 
 Commonwealth v. Wimberly,
 
 488 Pa. 169, 411 A.2d 1193 (1979);
 
 Commonwealth v. Rhodes,
 
 354 Pa.Super. 24, 510 A.2d 1259 (1986). The court in such case is not the trier of the facts.
 
 See Commonwealth v. Wimberly, supra.
 
 The admission implied in the demurrer leaves for consideration the single inquiry whether the evidence introduced presents such a state of facts, with the inferences fairly arising therefrom, as would support a verdict of guilty.
 
 See id.
 
 In deciding whether to grant a demurrer, the trial court must determine whether the evidence, if credited by the jury, is legally sufficient to prove that the defendant is guilty beyond a reasonable doubt.
 
 Id.
 

 However, when a trial court denies a demurrer and the defendant thereafter presents a defense, the defendant’s ability to challenge the propriety of the order denying the demurrer is foreclosed.
 
 Commonwealth v. Mott,
 
 372 Pa.Super. 133, 539 A.2d 365 (1988). At this point, a challenge to the correctness of the trial court’s ruling can only be regarded as a challenge to the sufficiency of the evidence.
 
 Id.
 

 
 *248
 
 Instantly, after appellant’s demurrer was denied, appellant, through his attorney, presented a defense. Thus, appellant may not challenge the propriety of submitting the third degree charge to the jury.
 

 Moreover, the challenge to the correctness of the denial of the demurrer is meritless. Appellant, through his demurrer, had admitted the facts presented by the Commonwealth. An eyewitness testified that he saw appellant shoot the victim during an argument. Further, appellant’s girlfriend testified that appellant admitted shooting the victim but that it was an accident. There was testimony that appellant and the victim were involved in an argument prior to the shooting. The Commonwealth entered evidence that appellant shot the victim in the upper left portion of his chest and the victim died as a result of the gunshot wound.
 

 The evidence presented, if believed by the jury, was legally sufficient to prove that appellant was guilty beyond a reasonable doubt of third degree murder. The' use of a deadly weapon on a vital part of the victim’s body can be used to infer malice.
 
 See Commonwealth v. Pigg, supra.
 
 Additionally, testimony that appellant took the gun out during an argument and pointed it at the victim’s chest shows reckless indifference to the risk of death or substantial bodily injury to another. Further, pulling a gun out during an argument can show ill-will. Evidence was presented by which a jury could find that malice was proven beyond a reasonable doubt. Thus, it was not erroneous to submit the case to the jury.
 

 Finally, an argument that the evidence was insufficient to support the conviction of third degree murder is also meritless. Appellant alleges that the contradictory testimony which would be used to prove malice was insufficient to prove malice beyond a reasonable doubt. We disagree.
 

 In reviewing the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the Commonwealth, and the Commonwealth is entitled to all favorable inferences which may be drawn from the evidence.
 
 Commonwealth v. Hanes,
 
 361 Pa.Super.
 
 *249
 
 357, 361, 522 A.2d 622, 623-24 (1987);
 
 Commonwealth v. Reddix,
 
 355 Pa.Super. 514, 519, 513 A.2d 1041, 1045 (1986);
 
 Commonwealth v. Duffy,
 
 355 Pa.Super. 145, 154-55, 512 A.2d 1253, 1260-61 (1986). If a jury could have reasonably determined from the evidence adduced that all of the necessary elements of the crime were established, then the evidence will be deemed sufficient to support the verdict.
 
 Commonwealth v. Gerulis,
 
 420 Pa.Super. 266, 273, 616 A.2d 686, 689 (1992);
 
 Commonwealth v. Berkowitz,
 
 415 Pa.Super. 505, 515, 609 A.2d 1338, 1343 (1992).
 

 Commonwealth v. Wood,
 
 432 Pa.Super. 183, 198-200, 637 A.2d 1335, 1343 (1994).
 
 See also Commonwealth v. La,
 
 433 Pa.Super. 432, 640 A.2d 1336, 1350 (1994). In addition, the mere fact that some inconsistencies exist is not, absent more, enough to destroy the Commonwealth’s case, as it is the fact finder’s function to resolve inconsistencies by believing all, part or none of a particular witness’ testimony.
 
 Commonwealth v. Johnson,
 
 421 Pa.Super. 433, 438, 618 A.2d 415, 417 (1992);
 
 Commonwealth v. Williams,
 
 290 Pa.Super. 209, 214, 434 A.2d 717, 719-20 (1981).
 

 Instantly, the jury heard evidence that the victim died as a result of appellant’s use of a deadly weapon on a vital part of the victim’s body. Testimony was also presented that appellant and the victim were arguing when appellant pulled out the gun. Additionally, appellant hit the victim several times with the gun and then pointed the gun at the victim’s chest. From the circumstances surrounding appellant’s conduct, the jury could find that appellant had acted with malice beyond a reasonable doubt. Thus, the evidence was sufficient to support the conviction for third degree murder.
 

 In his third issue, appellant again states a different issue in his statement of questions than is included in the argument section of his brief. In his statement of questions, appellant claims that the trial court erred when it failed to suppress statements made by appellant to the police concerning appellant’s knowledge about the shooting of the victim. This issue is without merit.
 

 
 *250
 
 Appellant’s prior counsel, Mr. Stone, withdrew the motion to suppress. (N.T. 12/4/92 at 39; Trial Court Order 2/22/93,
 
 [9]
 
 paragraph 10). Thus, the trial court could not rule on the motion to suppress the statements. Hence, there was no error on the part of the trial court for not suppressing the statements.
 

 In his argument section, appellant claims prior counsel was ineffective for withdrawing the motion to suppress the statements. This issue is waived.
 

 When an appellant attempts to tack on claims of ineffective assistance of counsel without presenting them in the statement of questions presented, the ineffective assistance claims are waived.
 
 Commonwealth v. Cauto,
 
 369 Pa.Super. 381, 535 A.2d 602 (1987),
 
 alloc. denied,
 
 521 Pa. 601, 555 A.2d 112 (1989);
 
 Commonwealth v. Duden,
 
 326 Pa.Super. 73, 473 A.2d 614 (1984). Presently, appellant is tacking his ineffective assistance of counsel claim onto his issue three although he fails to present the ineffective assistance claim in his statement of questions. Thus, the issue is waived. Moreover, we cannot grant appellant relief on his claim of ineffective assistance of counsel.
 

 Our standard when reviewing a claim of ineffective assistance of counsel is whether appellant established that: (1) by act or omission counsel was arguably ineffective; (2) counsel’s act or omission could not have had a reasonable basis designed to effectuate appellant’s interests; and (3) appellant was prejudiced by the act or omission and but for that act or commission, there was a reasonable probability that the result would have been different.
 
 Commonwealth v. Gillespie,
 
 423 Pa.Super. 128, 132, 620 A.2d 1143, 1145 (1993);
 
 Commonwealth v. Petras,
 
 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987).
 

 Commonwealth v. Wood, supra,
 
 432 Pa.Super. at 217, 637 A.2d at 1352. In making assertions of ineffective assistance of counsel, an appellant must allege sufficient facts upon which a
 
 *251
 
 reviewing court can conclude that counsel may have been ineffective as appellate courts will not consider such claims in a vacuum.
 
 Commonwealth v. Donahue,
 
 428 Pa.Super. 259, 630 A.2d 1238 (1993).
 

 Here, appellant fails to provide any meaningful discussion of whether his claim has arguable merit. Rather, appellant baldly states that the statements were made after an arrest without probable cause and in violation of the defendant’s
 
 Miranda
 
 rights. Appellant cites no authority or facts supporting his assertion that the arrest was without probable cause and in clear violation of appellant’s
 
 Miranda
 
 rights. Further, appellant concedes that the abandonment of the motion to suppress the statements may have been reasonable under the theory used by the defense. Appellant’s Brief at 36. As there is no meaningful discussion on whether the underlying issue has arguable merit and appellant concedes there may have been a rational basis for Mr. Stone’s withdrawal of the motion, we cannot afford appellant any relief on this claim.
 

 Appellant next avers that Mr. Stone was ineffective for failing to object to the trial court’s order which gave the Commonwealth a copy of appellant’s psychiatric evaluation. We disagree.
 

 Appellant argues that the psychiatric evaluation was to determine appellant’s competency to stand trial and any possible mitigating circumstances on the issue of capital punishment. Appellant contends that no facts were alleged under which appellant would raise a defense of insanity or mental infirmity.
 
 [10]
 
 Nor, appellant avers, did the Commonwealth show that the psychiatric evaluation was material to the preparation of its case against appellant. Appellant posits that, based on these circumstances, his right against compulsory self-incrimination was violated when the Commonwealth received a copy of the psychiatric evaluation.
 

 
 *252
 
 Appellant alleges that he was prejudiced by Mr. Stone’s failure to object to the Commonwealth receiving a copy when the Commonwealth, based on the statements appellant made to the psychiatrist during the evaluation, attempted to call the psychiatrist as a “fact witness” and not an “expert witness.” The Commonwealth “wanted to use [the statements made in the psychiatric evaluation] to challenge the veracity of [appellant’s] statements to other witnesses called by the Commonwealth in its case against [appellant].” Appellant’s Brief at 37-38.
 

 Even if we assumed that the underlying claim had merit and that there was no rational basis for Mr. Stone’s failure to object to the Commonwealth being provided with a copy of the psychiatric evaluation, appellant must show he was prejudiced as a result of Mr. Stone’s lack of an objection. The psychiatrist was not permitted to testify as a fact witness. N.T.Vol. III at 454-55. Therefore, the statements made to the psychiatrist were not used to challenge the veracity of statements made by appellant to other individuals. Thus, the Commonwealth’s having a copy of the evaluation did not prejudice appellant. As appellant suffered no prejudice due to Mr. Stone's failure to object to the Commonwealth receiving a copy of appellant’s psychiatric report, Mr. Stone was not ineffective.
 
 [11]
 

 Appellant also posits that the trial court erred when it refused to grant appellant’s request for a change of venue or venire despite the pre-trial publicity. This issue is without merit.
 

 The refusal of a change of venue is within the sound discretion of the trial court, which is in the best position to assess the community feeling, and the refusal will not be disturbed absent an abuse of discretion.
 
 Commonwealth v. O’Kicki,
 
 408 Pa.Super. 518, 597 A.2d 152 (1991),
 
 alloc. denied,
 
 534 Pa. 637, 626 A.2d 1156 (1993);
 
 Commonwealth v. Patter
 
 
 *253
 

 son,
 
 392 Pa.Super. 331, 572 A.2d 1258 (1990),
 
 alloc. denied,
 
 527 Pa. 631, 592 A.2d 1299 (1991). “In reviewing the trial court’s decision, the only legitimate inquiry is whether any juror formed a fixed opinion of appellant’s guilt or innocence as a result of the pre-trial publicity.
 
 Commonwealth v. Kichline,
 
 468 Pa. 265, 274, 361 A.2d 282, 287 (1976);
 
 Commonwealth v. Patterson, supra
 
 at 349, 572 A.2d at 1268. The mere existence of pre-trial publicity does not warrant a presumption of prejudice.
 
 Commonwealth v. Casper,
 
 481 Pa. 143, 392 A.2d 287 (1978). A possibility that prospective jurors will have formed an opinion based on news accounts also will not suffice.
 
 Commonwealth v. Patterson, supra.
 

 We have, however, recognized that occasions may arise where the pre-trial publicity is so pervasive and inflammatory that a defendants [sic] normal burden of demonstrating actual juror prejudice is obviated. Pre-trial prejudice is presumed if: (1) the publicity is sensational, inflammatory, and slanted towards conviction rather than factual and objective; (2) the publicity reveals the accused’s prior criminal record, if any, or if it refers to confessions, admissions, or reenactments of the crime by the accused; and (3) the publicity is derived from police and prosecuting office reports.
 
 [Commonwealth v. Casper, supra].
 

 The publicity must be so extensive, sustained and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated with it.
 
 Id.
 

 Commonwealth v. O’Kicki, supra,
 
 408 Pa.Super. at 527, 597 A.2d at 157 (quoting
 
 Commonwealth v. Pursell,
 
 508 Pa. 212, 221, 495 A.2d 183, 187-88 (1985)).
 

 The trial court reviewed the newspaper articles and newscasts which were broadcast concerning the April 2, 1992 shooting and found that appellant was not subjected to pervasive, prejudicial and sensational publicity. Trial Court Opinion 2/22/93 at 16-20. The trial court also found that any harmful effect of any adverse publication would have dissipated by the time appellant was brought to trial. Trial Court Opinion 11/23/93 at 18; Trial Court Opinion 2/22/93 at 16-20.
 

 
 *254
 
 After reviewing the articles and the transcripts of the radio broadcasts, we agree with the trial court that the pre-trial publicity had not subjected appellant to pervasive prejudice. The articles detailed the history and the progress of the investigation and proceedings of the ease and were devoid of comments on the merits of the case. The only other criminal act of appellant that the articles and radio refers to are the drug charges brought against appellant after drugs were found on appellant when he had been brought in for questioning concerning the shooting. Furthermore, a good portion of the articles discussed Willow Hotel, its reputation and the investigation by authorities of Willow Hotel. The trial court’s decision to refuse the request for change of venue or venire is further buttressed by the fact that all of the publicity cited by appellant occurred at least four months prior to the trial.
 

 Moreover, the trial court gave appellant ample opportunity to examine potential jurors about any prior knowledge of this case. The trial court was satisfied after jury selection that there was no need to reconsider its decision regarding the change of venue or venire. Trial Court Opinion 11/23/93 at 18. Appellant does not claim that voir dire of the potential jurors showed that articles and newscasts prejudiced the jurors.
 
 [12]
 
 Thus, the trial court did not abuse its discretion when it refused to grant the request for change of venue.
 

 Appellant also alleges that the trial court erred when it refused to grant appellant’s request for a bill of particulars which extended beyond the names and addresses of witnesses who might be called to establish aggravating circumstances for the first degree murder charge. This issue is meritless.
 

 “An application for a Bill of Particulars is ‘addressed to the [trial] court’s discretion.’ ”
 
 Commonwealth v. Hassine,
 
 340 Pa.Super. 318, 361, 490 A.2d 438, 461 (1985) (quoting
 
 Commonwealth v. Scott,
 
 469 Pa. 258, 265, 365 A.2d 140, 143 (1976)); Pa.R.Crim.P. 304. A bill of particulars is intended to give notice to the accused of the offenses charged in the indictment so that the accused may prepare a defense,
 
 *255
 
 avoid a surprise, or intelligently raise pleas of double jeopardy and the statute of limitations.
 
 Commonwealth v. Chambers,
 
 528 Pa. 558, 580, 599 A.2d 630, 641 (1991),
 
 cert. denied,
 
 - U.S. -, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992). A bill of particulars is not a substitute for discovery and the Commonwealth’s evidence is not a proper subject to which a bill of particulars may be directed.
 
 Id.
 
 Further, when there is no evidence that (1) the Commonwealth withheld exculpatory evidence, or evidence otherwise favorable to the accused; (2) exceptional circumstances existed; or (3) “surprises” occurred at the trial, we will not find an abuse of discretion.
 
 Commonwealth v. Chambers, supra; Commonwealth v. Mamon,
 
 449 Pa. 249, 297 A.2d 471 (1972).
 

 Instantly, appellant’s bill of particulars contained ninety-six paragraphs. The trial court granted paragraphs ninety-one through ninety-six requesting clarification of the aggravating circumstances which were the basis for the request for the death penalty. The remaining information requested in the bill of particulars was extensively set forth in the probable cause statement, the criminal complaint, the information filed in the case, the discovery provided appellant pursuant to Pa.R.Crim.P. 305 and the
 
 habeas corpus
 
 hearing. Appellant had sufficient notice of the offense charged so that he could prepare a defense and avoid surprise.
 

 Furthermore, appellant made no complaint that the Commonwealth was not complying with its discovery obligations. In fact, appellant had stated throughout the proceedings that the Commonwealth was in full compliance with its discovery obligations. Additionally, appellant does not claim that any specific “surprise” occurred during trial nor does appellant explain how he was unable to prepare a defense with the extensive information he had. We conclude that the trial court did not abuse its discretion in denying paragraphs one through ninety of appellant’s bill of particulars.
 

 In his last issue, appellant contends that the trial judge, the Honorable Linda Ludgate, should have recused herself from this case because she was a named defendant in a federal
 
 *256
 
 lawsuit in which appellant was a plaintiff. Appellant claims that the trial judge’s status as a defendant in the federal case prevented her from being impartial and providing appellant with a fair trial.
 

 “Recusal is required whenever there is a substantial doubt as to a jurist’s ability to preside impartially.”
 
 Commonwealth v. Lemanski,
 
 365 Pa.Super. 332, 339, 529 A.2d 1085, 1088 (1987). The Code of Judicial Conduct calls for disqualification where a judge’s impartiality “might reasonably be questioned, including but not limited to instances where ... he has a personal bias or prejudice concerning a party.” Code of Judicial Conduct, Cannon 3, subdiv. C(1)(a);
 
 Commonwealth v. Lemanski, supra.
 

 The party seeking recusal of a trial judge bears the burden of establishing grounds for recusal.
 
 Commonwealth v. Lott,
 
 398 Pa.Super. 573, 581, 581 A.2d 612, 616 (1990),
 
 alloc. denied,
 
 527 Pa. 663, 593 A.2d 839 (1991). The trial judge is deemed the foremost arbiter of his own personal bias or prejudice and hence his competence to preside over a matter.
 
 Commonwealth v. Hammer,
 
 508 Pa. 88, 494 A.2d 1054 (1985). Thus, the decision of a trial judge not to recuse himself will not be disturbed absent an abuse of discretion.
 
 Commonwealth v. Lemanski, supra.
 
 Moreover, when a defendant is tried by a jury, which exercised sole responsibility for evaluating the testimony and arriving at a verdict, the integrity of the fact-finding process is insulated from any predispositions held by the trial judge.
 
 Commonwealth v. West,
 
 270 Pa.Super. 301, 411 A.2d 537 (1979).
 

 Instantly, appellant alleged facts that the trial judge was one of the defendants in a federal case in which appellant was one of the plaintiffs. The federal lawsuit was brought by a group of prisoners in the Berks County Prison against the entire Berks County Bench, the Berks County Public Defenders Office, and the County Commissioners. The lawsuit involved a question of funding of the Berks County Public Defender’s Office. Judge Ludgate determined she had no authority over the matter of funding. Thus, Judge Ludgate
 
 *257
 
 concluded, appellant failed to establish any reason for her to recuse herself.
 

 Appellant contends, however, that the fact that Judge Ludgate is a defendant in the case is enough to show prejudice. Appellant further posits that the prejudice was shown when Judge Ludgate permitted the case to go to the jury despite contradictory evidence.
 

 We have already determined that it was proper to submit the case to the jury. There was sufficient evidence for the jury to convict appellant. Thus, submitting the case to the jury for their factual determination of guilt does not show any prejudice or bias that Judge Ludgate allegedly felt towards appellant. Further, an extensive and thorough review of the record does not reveal any prejudice or bias against appellant by Judge Ludgate.
 

 Moreover, we note that the entire Berks County Bench were defendants in the federal case. Thus, the entire bench would be prejudiced against appellant if we follow appellant’s logic. However, appellant did not allege the federal lawsuit against the entire Berks County Bench as a ground for a change of venue. We conclude that Judge Ludgate did not abuse her discretion when she refused to recuse herself.
 
 [13]
 
 Based on the foregoing, we vacate appellant’s convictions for aggravated assault and affirm appellant’s judgment of sentence on the other charges.
 

 Vacate convictions on both counts of aggravated assault. Affirm judgment of sentence on remaining convictions.
 

 CAVANAUGH, J., concurred in the result.
 

 [1]
 

 . 18 Pa.C.S.A. § 2502(c).
 

 [2]
 

 . 18 Pa.C.S.A. § 2702(a)(1) and (4).
 

 [3]
 

 . 18 Pa.C.S.A. § 907(a).
 

 [4]
 

 . 18 Pa.C.S.A. § 6106(a).
 

 [5]
 

 . No sentence was imposed for either count of aggravated assault because for sentencing purposes both aggravated assaults and third degree murder merge.
 

 [6]
 

 . Soja was told that appellant had been searched. Nevertheless, Soja searched appellant again. Soja testified he was searching for weapons. During the search, Soja removed a packet from appellant’s pocket containing heroin and a small bag of marijuana.
 

 [7]
 

 . We do not remand for a new trial on the aggravated assault charges because even if appellant is convicted on the two charges of aggravated assault, no sentence can be imposed because the aggravated assault charges will merge for sentencing purposes with the third degree murder charge for which a sentence is already imposed and which we affirm in this opinion.
 

 [8]
 

 . Exsanguination is extensive loss of blood due to internal or external hemorrhage. Dorland’s Illustrated Medical Dictionary (25th ed. 1974).
 

 [9]
 

 . The February 22, 1993 opinion was an opinion in disposition of appellant’s omnibus pre-trial motion.
 

 [10]
 

 . During the trial, Mr. Grenko, also appellate counsel, stated that Mr. Stone did allege in a pretrial motion that there might be an insanity plea. N.T.Vol. III at 429-30. Mr. Grenko then states that no notice was given to the Commonwealth that an insanity defense was going to be utilized during trial.
 
 Id.
 
 at 430-31, 432.
 

 [11]
 

 . The trial court found that appellant was competent to stand trial and that appellant had no insanity defense. N.T.Vol. III at 453. Also, the Commonwealth withdrew its request for the death penalty.
 
 Id.
 
 Thus, there was no need for the psychiatrist to testify as an expert witness.
 

 [12]
 

 . A transcript of the voir dire has not been provided for our review.
 

 [13]
 

 . The federal lawsuit has been dismissed.