681 A.2d 195

**COMMONWEALTH of Pennsylvania**

v.

**Marvin BASKERVILLE, Appellant.**

Superior Court of Pennsylvania.

Submitted June 10, 1996.

Filed Aug. 1, 1996.

Charles P. Mirarchi, III, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CIRILLO, President Judge Emeritus, and KELLY and MONTEMURO *, JJ.

CIRILLO, President Judge Emeritus:

Marvin Baskerville appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County following his conviction for third-degree murder, robbery, and criminal conspiracy. We affirm.

On or about the night of March 30, 1994, Baskerville and his friend, Baron Simmons, were walking through their West

---

* Retired Justice assigned to Superior Court.

Philadelphia neighborhood when they came upon the co-defendant, John Haynes, and another man, Mark Malloy. Malloy asked Baskerville if he had $100.00 that he owed him. Baskerville, realizing that Haynes had a gun, replied that he did not and began to walk away. Haynes called to Baskerville and asked him if he knew who was sitting in a car that was parked nearby. When Baskerville responded that he did not know, Haynes suggested that they investigate the occupants of the car together. Upon investigation of the auto, Baskerville discovered that he knew both the driver's side occupant, Darren Williams, and the passenger's side occupant, David Anderson. After a brief conversation with the occupants, both Baskerville and Haynes walked away from the car.

Upon reaching the street corner, Haynes asked Baskerville whether Williams or Anderson was wearing any jewelry. After Baskerville replied that both men were wearing jewelry, Haynes asked Baskerville to return to the auto and ask the occupants for a cigarette.[1] Baskerville agreed, walked to the car and asked Anderson for a cigarette. Meanwhile, Haynes approached the driver's side window and demanded Williams' jewelry at gunpoint. As Williams was handing his watch to Haynes, he tried to push the gun aside and drive away. Once Williams stepped on the accelerator, Haynes shot him four times in the back. The car, driven by Williams, crashed into a nearby, parked car. Williams later died from massive blood loss. The day after the robbery, Baskerville saw Haynes in the neighborhood, where he promised Baskerville $50.00 for keeping quiet about the crime and also forgave Baskerville's $100.00 debt owed to Malloy.

Baskerville was tried by a jury and convicted of third-degree murder, robbery, and criminal conspiracy. He was sentenced to a term of ten to twenty years in prison for the murder charge, and to concurrent terms of five to ten years for the robbery and two to four years for criminal conspiracy.

---

1. Baskerville testified that prior to approaching the automobile and asking for a cigarette, he believed that the co-defendant, Haynes, planned to rob the occupants.

Baskerville files this appeal in which he raises the following issues for our review:

(1) Did the Commonwealth commit prosecutorial misconduct requiring a new trial when, during closing argument, the prosecutor took off his wristwatch and tried to hand it to the defendants?

(2) Was the evidence presented by the Commonwealth insufficient to sustain a conviction for third-degree murder where there was no malice proved on behalf of the defendant?

(3) Was the evidence presented by the Commonwealth sufficient to prove beyond a reasonable doubt that the defendant did not act under duress?

(4) Was the evidence presented by the Commonwealth sufficient to sustain a conviction for criminal conspiracy to commit murder where the evidence presented only went to show a possible conspiracy to commit robbery?

(5) If the conviction for third-degree murder was premised solely on the conspiracy to commit murder conviction and such a conspiracy was never proved, does not the conviction for third degree murder also fail?

Baskerville first contends that the Commonwealth committed prosecutorial misconduct warranting a new trial when, during closing argument, the prosecutor took off his wristwatch and tried to hand it to the defendants.

This Court has recently defined the standard for ordering a new trial in a case where a prosecutorial statement is deemed improper. *Commonwealth v. Upsher*, 497 Pa. 621, 444 A.2d 90 (1982). There we concluded that, although a prosecutor's statement may be inappropriate, a new trial will not be granted unless it is inevitable that the prosecutor's remark prejudiced the defendant to such a degree that it prevents the jury from weighing the evidence and rendering a true verdict. *Id.*, 497 Pa. at 627, 444 A.2d at 92. *See also Commonwealth v. Scarpino*, 494 Pa. 421, 431 A.2d 926 (1981) (New trial warranted when unavoidable effect of prosecutorial comment is to deprive defendant of fair trial);

*Commonwealth v. Martin,* 461 Pa. 289, 336 A.2d 290 (1975); *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973). Furthermore, "[T]he prejudicial effect of the district attorney's remarks must be evaluated in the context in which they occurred." *Commonwealth v. Smith,* 490 Pa. 380, 416 A.2d 986 (1980); *Commonwealth v. Perkins,* 473 Pa. 116, 373 A.2d 1076 (1977). However, a reversal is not an automatic formality for every intemperate or improper comment by the prosecution.

*Commonwealth v. Chimenti,* 362 Pa.Super. 350, 364, 524 A.2d 913, 920 (1987), *allocatur denied,* 516 Pa. 639, 533 A.2d 711 (1987) (*quoting Commonwealth v. Maxwell,* 505 Pa. 152, 166, 477 A.2d 1309, 1316–17 (1984), *cert. denied,* 469 U.S. 971, 105 S.Ct. 370, 83 L.Ed.2d 306 (1984)).

The alleged misconduct occurred during the prosecutor's closing argument, where the following exchange took place:

MR. CAMERON: ... Darren Williams, a 29 year old man, who is six feet under because of these people. He should be alive. He should be at home with his wife and his mom, whatever. This should have been nothing more than a robbery case, but instead, he is dead. One has to wonder what is going on in this world, in this city, that two young men after work on an evening can't sit outside of a playground to talk about their day or what happened, but instead **have something like this, over a watch, his jewelry, and saying you can have it**—

MR. PERRI: I object.

MR. MIRARCHI: Objection. I move for a mistrial.

MR. PERRI: I move for a mistrial also. Let the record reflect that comment was directed at Mr. Haynes.

THE COURT: I will sustain the objection.

MR. CAMERON: They asked for jewelry. The man had a watch. The medical examiner said there was no watch. Robbery was the motive.

MR. MIRARCHI: There was no testimony that Mr. Baskerville said anything. In fact, to the contrary, there was testimony he said nothing.

THE COURT: I will sustain the objection.

From our review of the record, there is no evidence that the prosecutor removed his wristwatch and handed it to Baskerville. Instead, the record indicates that the prosecutor's remarks were directed at the co-defendant, Haynes, and not Baskerville. Furthermore, Mr. Mirarchi, counsel for Baskerville, appears to be primarily concerned with the prosecutor's assertion that Baskerville voiced a demand for the jewelry, and not with the prosecutor's actions which he now attacks.

 The failure to include the relevant facts for an analysis of appellate issues precludes this court from conducting a review on appeal. *See* Pa.R.A.P. 2119 ("[i]f reference is made to ... any other matter appearing in the record, **the argument must set forth,** in immediate connection therewith ... **a reference to the place in the record where the matter referred appears.**"). We will only take the facts as presented in the certified record, and will not create unsubstantiated inferences from a party's assertions in its brief. *See Commonwealth v. Rini,* 285 Pa.Super. 475, 483, 427 A.2d 1385, 1390 (1981). Accordingly, we find that we are unable to review this issue. *See Commonwealth v. Buehl,* 403 Pa.Super. 143, 148, 588 A.2d 522, 524, *allocatur denied,* 528 Pa. 627, 598 A.2d 281 (1991) (only the facts that appear in the official record may be considered by an appellate court); *Commonwealth v. Muntz,* 428 Pa.Super. 99, 107, 630 A.2d 51, 55 (1993) (it is appellant's responsibility to offer a complete record for our review).[2] *See also* Pa.R.A.P. 1911(a).

 Baskerville's next three arguments concern the sufficiency of the evidence presented by the Commonwealth. In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the

2. Similarly, Baskerville's reference to a *Philadelphia Daily News* article which alludes to the prosecutor's alleged misconduct is not reviewable by this court. *See* Pa.R.A.P. 1921 (appellate court may only consider the facts which have been duly certified in the record on appeal).

crimes charged was established beyond a reasonable doubt. *Commonwealth v. Jarman,* 529 Pa. 92, 94–95, 601 A.2d 1229, 1230 (1992); *Commonwealth v. Swann,* 431 Pa.Super. 125, 635 A.2d 1103 (1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow,* 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176 (1994) (citing *Commonwealth v. Hardcastle,* 519 Pa. 236, 246, 546 A.2d 1101, 1105 (1988)). *See also Commonwealth v. Chmiel,* 536 Pa. 244, 639 A.2d 9 (1994). Furthermore, a mere conflict in the testimony of the witnesses does not render the evidence insufficient because "it is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Moore,* 436 Pa.Super. 495, 501, 648 A.2d 331, 333 (1994) (citations omitted).

■ Baskerville claims that the evidence presented by the Commonwealth was insufficient to prove malice in order to sustain his conviction for third-degree murder. The record belies this assertion.

The Pennsylvania Criminal Code defines third-degree murder as all other kinds of murder, other than first-degree or second-degree murder. *See generally* 18 Pa.C.S.A. § 2502(c). Case law further explains that third-degree murder is a killing done with legal malice but without the specific intent to kill required in first-degree murder. *See Commonwealth v. Seibert,* 424 Pa.Super. 242, 248, 622 A.2d 361, 364 (1993), *allocatur denied,* 537 Pa. 631, 642 A.2d 485 (1994) (citing *Commonwealth v. Pitts,* 486 Pa. 212, 404 A.2d 1305 (1979)). In *Commonwealth v. Young,* 494 Pa. 224, 431 A.2d 230 (1981), our supreme court noted that malice may be found where the "actor consciously disregard[s] an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Id.* at 228, 431 A.2d at 232.

In the present case, Baskerville entered into a criminal conspiracy to commit armed robbery. At the time of the

agreement, Baskerville had knowledge that his co-conspirator, Haynes, possessed a gun. Baskerville also testified that he, himself, was afraid of Haynes and what Haynes might do with this gun. In addition, Baskerville surmised that Haynes planned to rob the occupants of the vehicle. Combining these facts with Baskerville's actual participation in the crime, where there was an extremely high risk that his actions might cause death or serious bodily harm, it is clear to us that Baskerville acted with malice. He exhibited the type of behavior which presented an unjustifiable risk and reckless disregard for human life sufficient to establish legal malice. *See Young, supra* (malice may be found to exist in an unintentional homicide where the perpetrator has consciously disregarded unjustified and extremely high risk that his actions might cause death or serious bodily injury).

■ Further, as a conspirator, Baskerville is chargeable with the acts of his co-conspirator. *Commonwealth v. Glover,* 399 Pa.Super. 610, 582 A.2d 1111 (1990). Haynes indisputably acted with malice when, in the process of an attempted armed robbery, he shot the victim four times in the back, mortally wounding the victim. *See Commonwealth v. Mercado,* 437 Pa.Super. 228, 649 A.2d 946 (1994) (malice, as an essential element of third-degree murder, may be inferred from the use of a deadly weapon upon a vital part of the body). Accordingly, the malicious conduct of Haynes supports a finding that Baskerville also acted with malice. *Glover, supra; see also Commonwealth v. Bigelow,* 416 Pa.Super. 449, 611 A.2d 301 (1992) (malice could be inferred from the defendant's actions in planning and participating in the crime, even if the killing blows were struck by someone other than the defendant). The evidence was clearly sufficient to establish malice for Baskerville's third-degree murder conviction. *Young, supra.*

■ Baskerville next contends that the evidence proffered by the Commonwealth was insufficient to prove beyond a reasonable doubt that he did not act under duress. We disagree.

"The elements which must be shown to establish a duress defense are: (1) an immediate or imminent threat of death or

serious bodily injury; (2) a well grounded or reasonable fear that the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm except by committing the criminal act." *Commonwealth v. Morningwake,* 407 Pa.Super. 129, 140, 595 A.2d 158, 164, *allocatur denied,* 529 Pa. 618, 600 A.2d 535 (1991). The facts, when viewed in the light most favorable to the Commonwealth, establish that Baskerville owed $100.00 to Malloy, a friend of Haynes. Prior to the robbery, Baskerville also knew that Haynes had a gun in his possession, and was fearful of what Haynes might do with it. These facts alone, however, do not constitute a defense of duress. Baskerville is required to show that there was an immediate or imminent threat of serious bodily harm that impelled him to participate in the robbery. *Morningwake, supra.* This he has failed to do.

The Commonwealth offered evidence at trial that Baskerville did not voluntarily turn himself in to the authorities. Moreover, it is apparent that there were a number of reasonable opportunities for Baskerville to flee the crime scene and escape any "perceived" harm, however, he consciously failed to do so. Specifically, Baskerville was not forced to acknowledge Haynes when he first called to him; indeed, Baskerville's friend, Baron Simmons, continued to walk away. In addition, when Baskerville returned alone to the car to ask for a cigarette, he was given another reasonable opportunity to escape. This evidence is especially damaging to Baskerville, in light of his testimony that he believed that Haynes was about to rob the occupants of the vehicle. Based on our review, we find that the evidence presented by the Commonwealth was sufficient to prove beyond a reasonable doubt that Baskerville did not act under duress. *See Commonwealth v. Pelzer,* 531 Pa. 235, 612 A.2d 407 (1992) (appellant not entitled to a jury charge on duress where appellant failed to withdraw from a conspiracy, despite having numerous opportunities to do so, and where appellant's own assertions defeated his claim of duress).

■ Baskerville further contends that the evidence presented by the Commonwealth was insufficient to sustain a

conviction for criminal conspiracy to commit murder. We find this argument unpersuasive.

A conspiracy is an agreement to commit an unlawful act; the agreement can be proven by the relation, conduct, or circumstances of the parties. *Glover*, 399 Pa.Super. at 616, 582 A.2d at 1114. The law in Pennsylvania is settled that each conspirator is criminally responsible for the actions of his co-conspirator, provided that the actions are accomplished in the furtherance of a common design. *Commonwealth v. Robinson*, 351 Pa.Super. 309, 316, 505 A.2d 997, 1001 (1986); *Commonwealth v. Bachert*, 271 Pa.Super. 72, 77, 412 A.2d 580, 583 (1979). In addition, despite the fact that an individual co-conspirator did not contemplate to kill, where a killing is a natural and probable consequence of a co-conspirator's conduct, murder is not beyond the scope of the conspiracy. *Commonwealth v. La*, 433 Pa.Super. 432, 450, 640 A.2d 1336, 1345, *allocatur denied*, 540 Pa. 597, 655 A.2d 986 (1994).

In the present case, Baskerville knew that Haynes possessed a gun, Baskerville informed Haynes that Williams and Anderson were wearing jewelry in the car, and Baskerville surmised that a robbery was about to occur. Baskerville approached the passenger-side window and asked Anderson for a cigarette, at Haynes' request, thus allowing Haynes to approach the car unnoticed. Further, Baskerville positioned himself against the passenger-side door, effectively trapping Anderson inside the car while the robbery was in progress. In addition, as previously discussed, Baskerville participated in the robbery despite having had numerous opportunities to flee the scene. Finally, Baskerville testified that he was relieved of a $100.00 debt owed to a friend of Haynes, and was promised $50.00 to keep quiet about the robbery.

Combining these facts, and the reasonable inferences which may be drawn from them in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence to establish a criminal conspiracy to commit armed robbery between Baskerville and Haynes. *Jarman, supra*. Since the killing of Williams was done in furtherance of the armed robbery, Haynes' actions are attributable to Baskerville and

make him criminally responsible as well. *Robinson, supra; La, supra.* Baskerville's contention, therefore, is entirely without merit. *Glover, supra.*

Finally, Baskerville contends that if the evidence for third-degree murder was premised solely on the conspiracy to commit murder conviction, and such a conspiracy was never proven, then the conviction for third-degree murder must be reversed. Having already determined that there was sufficient evidence to convict Baskerville of conspiracy to commit murder, *Glover, supra; La, supra,* we find this argument moot.

Judgment of sentence affirmed.