J-S29010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON MAINES A/K/A JASON ALLEN MAINES, | |
| Appellant | No. 953 WDA 2015 |

Appeal from the Judgment of Sentence Entered December 30, 2014
In the Court of Common Pleas of Cambria County
Criminal Division at No(s):
CP-11-CR-0000774-2013
CP-11-CR-0001919-2013

BEFORE:  BENDER, P.J.E., PANELLA, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JUNE 1, 2016**

Appellant, Jason Maines (a/k/a Jason Allen Maines), appeals from the

aggregate judgment of sentence of 19 to 40 years' incarceration, imposed

after he was convicted (in two separate, but related cases) to various

offenses, including robbery, criminal conspiracy to commit robbery, burglary,

aggravated assault, terroristic threats, and intimidation of a witness or

victim.  Appellant challenges the sufficiency and weight of the evidence to

support his convictions.  We affirm.

We have reviewed the certified record, the briefs of the parties, and

the applicable law.  Additionally, we have reviewed the thorough and well-

_____

[*] Former Justice specially assigned to the Superior Court.

crafted opinion of the Honorable Norman A. Krumenacker, III, of the Court of Common Pleas of Cambria County. We conclude that Judge Krumenacker's extensive, well-reasoned opinion accurately disposes of the issues presented by Appellant. Specifically, Judge Krumenacker provides ample analysis in rejecting Appellant's arguments that the evidence was insufficient, and that the verdict was contrary to the weight of the evidence, because the Commonwealth failed to prove he was present at the scene of the crime(s), and that the scope of his conspiratorial or accomplice liability did not include inflicting, or intending to inflict, serious bodily injury on the victim in this case. *See* Trial Court Opinion (TCO), 8/19/15, at 7-16. Accordingly, we adopt Judge Krumenacker's opinion as our own and affirm Appellant's judgment of sentence on that basis.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date:  June 1, 2016



IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | * * * * Nos. 0774-2013, 1919-2013 * |
| vs. | * |
| JASON MAINES, | * Opinion Pursuant to Rule of Appellate * Procedure 1925(a)(1) |
| Defendant. | * * |

# Opinion Pursuant to Rule of Appellate Procedure

## 1925(a)(1)

__Krumenacker, J:__ On October 10, 2014, following a four-day jury trial Jason Maines (Maines) was convicted as follows:

1)  At docket number 0774-2013 one count each of: Criminal Attempt – Possession of a Controlled Substance with Intent to Deliver; Criminal Attempt – Intentional Possession of a Controlled Substance; Terroristic Threats; and Intimidation of Witnesses or Victims.[1]

2)  At docket number 1919-2013 one count each of: Criminal Conspiracy – Robbery; Robbery; Burglary; Aggravated Assault – Cause Serious Bodily Injury; Aggravated Assault – Cause Serious Bodily Injury with a Deadly Weapon; and Criminal Trespass.[2]

On December 30, 2014, Maines was sentenced to pay the costs of prosecution, pay restitution of $6,004.31, and serve an aggregate period of incarceration in a state correctional institute of

---

[1] 18 Pa. C.S. §§ 901(a), 901(a), 2706(a)(1), and 4952(a)(1) respectively.
[2] 18 Pa. C.S. §§ 903(a)(1), 3701(a)(1)(i), 3502(a)(1), 2702(a)(1), 2702(a)(4), and 3503(a)(1)(ii) respectively.

**EXHIBIT B**

nineteen (19) to forty (40) years incarceration, which is in the standard range. N.T. 12/30/14 pp. 19-29. In imposing this sentence the Court considered the sentencing guidelines, including mandatory sentences, Maines's Pre-sentence Investigation (PSI), victim impact statements, statements on behalf of Maines, sentencing memoranda from the Commonwealth, the sentencing options permissible under the applicable statutes, the circumstances surrounding the offenses, the testimony and evidence presented at trial, the likelihood that Maines' would re-offend, the fact that Maines' had been crime free for a period of 15 years, and the need to protect the public. Id. Maines filed Post-sentence Motions and a hearing on them was held May 14, 2015. The Motions were denied on June 1, 2015.

Maines filed a timely notice of appeal and a Concise Statement of Matters Complained of on Appeal (Concise Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) as Ordered by this Court. In his Concise Statement Maines raises two allegations of error:

1)      Were the convictions at docket 1919-2013 supported by sufficient evidence?

2)      Were the convictions against the weight of the evidence?

For the following reasons the appeal should be dismissed and the verdict and sentence should be affirmed.

# FACTUAL SUMMARY[3]

The testimony and evidence presented at trial revealed that on Saturday February 23, 2013, William Cawthorne (Cawthorne) was at his residence at 720 Highland Avenue in the Moxham section of the City of Johnstown. With Cawthorne were his girlfriend, Kimberly Darr

---

[3] The factual summary is distilled from the testimony presented at the trial in this matter without citation to specific portions of the record.

(Darr), Darr's eighteen year old nephew, Barry Black, Jr. (Black), and Cawthorne's two children. At approximately 11 a.m. UPS delivered a package to the residence and Darr, believing it to be a comforter she ordered, opened it. Inside the package and wrapped in various packing materials they found a large plastic bucket that contained a large quantity of what they suspected was marijuana. Darr and Cawthorne were concerned about taking the drugs to the police because Darr was on probation and they feared she would be charged relative to the drugs. While discussing what to do there was a knock at a side door[4] and Cawthorne answered the door where he encountered a man that he later identified as Maines and another unidentified man.

Maines asked if a package for him had been accidentally delivered to the residence and Cawthorne indicated that no package was delivered. Maines then left. Maines and the man appeared a few seconds later at another entrance and Maines again asked about his package this time offering money for its return. Cawthorne again denied that any package had been delivered and Maines once again left. After Maines left Cawthorne and Darr decided to burn the package and drugs and so Darr took them into the backyard where she was able to burn the packing materials but feared to burn the drugs because someone may smell the marijuana. Maines returned for a third time about twenty minutes later and again asked about his package. He told Cawthorne that if the package was not handed over by Monday Cawthorne would have trouble like he has never seen. Cawthorne again denied that he had the package and Maines once again left.

Following this third visit Cawthorne and Darr became fearful of Maines and decided to turn the drugs over to the Johnstown Police Department (JPD). They, along with Black and the

---

[4] The residence had been converted into three apartments each with a separate entrance and addresses. Cawthorne was in the process of converting it back into a single residence but the three entrances and addresses remained.

children, drove to the JPD Public Safety Building around 4:20 p.m. Once there they met with officers, gave oral and written statements, and turned over the bucket and marijuana. They requested a patrol car be stationed outside their residence due to their fears, but lack of manpower prevented this, however officers informed them they would increase the number of patrols in the area. The group then returned to the Highland Avenue residence and shortly after that Darr went to speak with a neighbor to warn them of what happened and ask them to watch for any unusual activity.

At some point during the day Maines called Charles Meyer (Meyer) for help in recovering his package. Meyer was at a casino in Wheeling, West Virginia for the weekend with his girlfriend Bethany Kline (Kline) when he received the call from Maines. Meyer immediately packed, left Wheeling, and returned to Johnstown. He met Maines who was driving a green Subaru that Meyer recognized as belonging to James Schroll (Schroll). Maines drove Meyer to pick up Schroll who was to help recover the package. At some point in the journey Maines handed Meyer a semi-automatic handgun. When Schroll got in the back seat of the car Meyer noticed that he was carrying a revolver. Maines then drove to Highland Avenue where he pointed out Cawthorne's residence and informed Meyer and Schroll that was where his package was. Maines then pulled into an alley where Meyer and Schroll got out of the car and walked to the back door of the Cawthorne residence.

Cawthorne heard a knock at the back door and saw two men in hoodies standing there. Fearing that they had come for the drugs he told them he had to get a key for the door and sent Black with the children upstairs with instructions to call 911. While this was occurring Schroll kicked in the back door and entered the residence with Meyer following a few seconds later. Schroll pointed his weapon at Cawthorne and demanded the drugs. Cawthorne lunged at

Schroll grabbing for the weapon and a short but vicious struggle for it ensued. During the struggle Meyer pulled his weapon from the waistband of his pants and used it to pistol-whip Cawthorne, ejecting the magazine in the process, and causing Cawthorne to bleed from the head. At some point during the struggle Schroll's revolver discharged with the round going through Cawthorne's left knee and striking Schroll in the head, both collapsed. Meyer heard the shot, saw them go down, fled the residence back to the car where he got in, told Maines that Schroll was shot, and to drive away. Maines then drove Meyer home and the following day he returned Schroll's car to his wife, Lanee Haselrig (Haselrig) and told her he heard about a shooting in Moxham and that she may want to check the hospital for Schroll. Schroll survived his injury but suffered brain damage as a result.

Neither Schroll nor Maines testified but Maines presented two alibi witnesses. Jessica Rickabaugh (Rickabaugh) testified that she lived with Maines, was the mother of two of his children and that on February 23rd he returned home from his job as an auto mechanic around 3 or 3:30 and did not leave the house after that. Rickabaugh testified that she recalls this because they had a birthday dinner that night for their three-year-old daughter. Linda Stephens (Stephens) testified that she is Maines' aunt and that she arrived at his home around 4:50 p.m. on February 23rd for the dinner, left around 6:30 p.m., and that Maines was there the entire evening. By nature of the verdicts the jury did not find the alibi witnesses credible and found Cawthorne's and Meyer's testimony credible as eyewitnesses to these events.

# DISCUSSION

I.      **Were the convictions at docket 1919-2013 supported by sufficient evidence?**

In his first allegation of error Maines argues that the evidence was insufficient to permit a conviction in two areas: (1) the evidence was insufficient to show that Maines was present at

the scene or otherwise was an accomplice in the commission of the offense at docket 1919; and (2) the evidence did not establish the scope of the alleged conspiracy included inflicting or attempting to inflict serious bodily injury thereby encompassing the charges of robbery and aggravated assault.

It is well settled that "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Simmons, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995). When reviewing for sufficiency of the evidence, a court may not substitute its judgment for that of the fact-finder and if the record contains support for the verdict, it may not be disturbed. Commonwealth v. Murdick, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). A court may not reverse the fact finder's determination unless it is "so contrary to evidence as to shock one's sense of justice." Simmons, 541 Pa. at 229, 662 A.2d at 630.

The test for the sufficiency of the evidence in a criminal case is whether the evidence admitted at trial is sufficient to prove every element of the crime or crimes charged beyond a reasonable doubt. Commonwealth v. Harper, 485 Pa. 572, 403 A.2d 536 (1979); Commonwealth v. Tate, 485 Pa. 180, 401 A.2d 353 (1979); Commonwealth v. Liddick, 485 Pa. 121, 401 A.2d 323 (1979). The proper application of this test requires an evaluation of the entire trial record and all evidence actually received, in the aggregate and not as fragments isolated from the totality of the evidence. Harper, 485 Pa. at576, 403 A.2d at 538. The standard of review for a sufficiency of the evidence challenge is well settled:

> [W]e must review the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. The credibility of witnesses and the weight to be accorded the evidence are matters within the province of the trier of fact; the fact finder is free to believe all, some or none of the evidence.

Commonwealth v. Taylor, 324 Pa. Super. 420, 424-425, 471 A.2d 1228, 1229-1230 (1984)(internal citations omitted). See also, Commonwealth v. Hill, 427 Pa. Super. 440, 442-43, 629 A.2d 949, 950 (1993).

Further, "[the court] may not weigh the evidence and substitute our judgment for the fact-finder." Commonwealth v. Butler, 856 A.2d 131, 135 (Pa. Super. 2004) (quoting Commonwealth v. Cassidy, 447 Pa. Super. 192, 668 A.2d 1143, 1144 (1995)). Our Supreme Court has explained that

> In applying this standard, we bear in mind that the Commonwealth may sustain its burden by means of wholly circumstantial evidence; that the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and that the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence.

Commonwealth v. Reed, 605 Pa. 431, 436, 990 A.2d 1158, 1161 (2010), *cert. denied*, 131 S. Ct. 549, 178 L. Ed. 2d 402 (2010)(citing Commonwealth v. Chmiel, 585 Pa. 547, 574, 889 A.2d 501, 517 (2005)). Finally, the facts and circumstances established by the Commonwealth "need not be absolutely incompatible with [the] defendant's innocence, but the question of any doubt is for the [fact finder] unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" Commonwealth v. Davidson, 860 A.2d 575, 590 (Pa. Super. 2004) (quoting Commonwealth v. Nicotra, 425 Pa. Super. 600, 625 A.2d 1259, 1261 (1993)).

Turning first to the issue of accomplice liability, basis for Maines conviction on these charges, Maines argues only that the evidence presented does not establish that he was present at the scene or otherwise was an actor or accomplice in these crimes. It is well settled that

> two prongs must be satisfied for a person to be labeled an 'accomplice.' First, there must be evidence that the person intended to aid or promote the underlying

offense. Second, there must be evidence that the person actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. Further, a person cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the person intended to aid in the commission of the underlying crime, and then aided or attempted to aid.

Commonwealth v. Rega, 593 Pa. 659, 690, 933 A.2d 997, 1015 (2007) (citations omitted). See also, 18 Pa. C.S. 306 (West 2015). For purposes of accomplice liability, "[n]o agreement is required, only aid." Commonwealth v. Kimbrough, 872 A.2d 1244, 1251 (Pa.Super.2005). "With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime." Commonwealth v. Murphy, 577 Pa. 275, 844 A.2d 1228, 1234 (2004). "[T]he least degree of assistance in committing the offense is adequate to sustain the finding of responsibility as an accomplice." Commonwealth v. Gladden, 445 Pa.Super. 434, 665 A.2d 1201, 1209 (1995).

As noted above neither Schroll or Maines testified however the jury heard extensive testimony from Meyer relative to the events that occurred on February 23rd. N.T. 10/7/14 pp. 52-118. Meyer testified that he has known Maines for over twenty years and has known Schroll for some time. Id. pp. 53, 57. Meyer testified that Maines called him while he was in Wheeling, that Maines said his package had been delivered to the wrong house, and he needed help in recovering the package Id. p. 65-66. Meyer testified that: he immediately left Wheeling; he returned to Johnstown; he met up with Maines, who was driving Schroll's car; he was given a semi-automatic handgun by Maines; they then picked up Schroll; that Schroll had a revolver with him; and that the three drove to Highland Avenue. Id. pp. 65-69, 99-104. Meyer testified that once on Highland Avenue, Maines identified Cawthorne's house as the one his package was at, Maines parked the car in an alley, that he and Schroll then went to the residence while Maines waited in the car, and that Schroll forced his way inside. Id. Meyer explained that once

inside he saw Schroll point the revolver at Cawthorne, heard him demand the drugs, that a struggle broke out, that he pistol-whipped Cawthorne, he heard a gunshot, he saw Cawthorne and Schroll go down, he fled back to the car where Maines was waiting, and the two of them drove away. Id. On cross-examination Meyer further testified that it was his understanding that he and Schroll were to get the package back using force if necessary and that Maines giving him the handgun made that very clear. Id. pp. 103-04.

Meyer was subject to intense cross-examination surrounding not only these events but also his prior criminal record, including various convictions for *crimini falsi*, why he initially denied involvement in the crimes, why he did not inform police of the facts until after he was incarcerated for several weeks, and what if any deals he had with the Commonwealth in exchange for his testimony. Id. pp. 83-115. In addition Maines presented two alibi witnesses who placed Maines at home the evening of February 23rd. N.T. 10/9/14 pp. 173-79 (testimony of Jessica Rickabaugh), 179-85 (testimony of Linda Stephens).

Viewed in the light most favorable to the Commonwealth, as verdict winner, Meyer's testimony is sufficient to support the convictions based on accomplice liability. The nature of the verdict suggests that the jury found Meyer's testimony credible and the testimony of the alibi witnesses not credible. Meyer's testimony establishes that Maines requested Meyer and Schroll help recover his package, provided Meyer with a weapon, drove Meyer and Schroll to Highland Avenue, identified the Cawthorne residence as where his package was, parked in an alley where he waited while Meyer and Schroll went in the residence, and then drove himself and Meyer away after the shooting. As such the testimony establishes that Maines had the intent of promoting or facilitating the commission of the offenses and that he actively participated in the crimes by soliciting, aiding, and agreeing to aid Meyer and Schroll to

commit the offenses. See, Commonwealth v. Dussinger, 478 Pa. 182, 386 A.2d 500 (1978) (Per O'Brien, J., with four Justices specially concurring, and one Justice concurring in result) (evidence, including showing that defendant knew her codefendants intended to recover stolen checks even if use of handguns was necessary, was sufficient to uphold finding that defendant was an accomplice and thus accountable for actions of her codefendants and was sufficient to sustain convictions for robbery and conspiracy); Commonwealth v. Toritto, 67 A.3d 29 (Pa. Super. 2013), *appeal denied*, 622 Pa. 759, 80 A.3d 777 (2013) (evidence was sufficient to show that defendant had knowledge of and participated in a sale of narcotics to an undercover police officer, as required to support conviction for being an accomplice to the delivery of a controlled substance; defendant drove the seller to bar where sale occurred, drugs were hidden inside defendant's car, defendant sat with seller and officer while they discussed sale, defendant handed seller his car keys for seller to go retrieve drugs, and, after officer handed over $3,200 in cash to seller in exchange for the drugs, defendant suggested to seller that he go into the bathroom to count the money);

Maines next argues that the evidence is insufficient to support his conviction for conspiracy to commit robbery where the evidence did not establish the scope of the conspiracy to include inflicting to attempting to inflict serious bodily injury and thereby encompassed the offenses of robbery and aggravated assault. The Court notes that at docket 1919 Maines was not convicted of conspiracy relative to the aggravated assault charges and that those convictions were based on an accomplice liability theory as is clear from the Amended Information and jury instructions. See, 10/2/14 Amended Information, N.T. 10/10/14 pp. 57-104,106-21. Maines only conspiracy conviction was for conspiracy to commit robbery. Id.

A conviction of conspiracy requires proof that "1) the defendant entered into an agreement with another to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed in furtherance of the conspiracy." Commonwealth v. Knox, 50 A.3d 749, 755 (Pa.Super.2012) (citation omitted), *affirmed,* ___ Pa. ___, 105 A.3d 1194 (Pa. 2014). See also, 18 Pa. C.S. § 903(a), (d) (West 2015). The underlying offense for the conspiracy was robbery, which requires proof, in relevant part, that in the course of committing a theft, the defendant or a coconspirator inflicts serious bodily injury upon another. 18 Pa. C.S. § 3701(a)(1)(i) (West 2015).

Here the evidence presented is sufficient to establish that Maines entered into an agreement with Meyer and Schroll that the two of them would recover his package from Cawthorne's residence using any means necessary including force, that they shared this goal, and that Maines engaged in several overt acts including calling Meyer, providing a weapon to Meyer, and driving the car to and from the Cawthorne residence. From this evidence, particularly Maines providing a weapon to Meyer, the jury could conclude that the scope of the conspiracy included inflicting serious bodily injury if necessary to retrieve the drugs. As such the evidence viewed as a whole is sufficient to support a conviction for conspiracy to commit robbery. Knox, *supra* (evidence was sufficient to support defendant's conspiracy conviction and his convictions of second-degree murder and attempted robbery of a motor vehicle based upon conspirator and accomplice liability; witnesses testified that defendant approached victim's vehicle with his twin brother and stood with him at the car door, contributing to the intimidation of the victim, witness observed both brothers run after the car together when it drove off, and the brother with the gun shoot towards the car, and once the car crashed into an abandoned house, witness testified that both brothers ran together away from the car and

around the corner). See also, Commonwealth v. Lambert, 795 A.2d 1010 (Pa. Super. 2002) (evidence was sufficient to convict defendant of conspiracy to commit burglary, where defendant and co-defendant had long and close relationship and co-defendant relied on defendant to be his driver, circumstantial evidence reflected that defendant and co-defendant had shared criminal plan of committing a burglary at co-defendant's girlfriend's house, defendant simply stood outside of his car, which was double-parked in front of co-defendant's girlfriend's house, with passenger door open, defendant waited for co-defendant to enter house and, then, to return, defendant continued to wait after girlfriend's mother was shot, and encouraged co-defendant to "come on" as he was dragging girlfriend out onto porch, finally, defendant drove co-defendant from the scene after he shot his girlfriend); Commonwealth v. Baskerville, 452 Pa. Super. 82, 681 A.2d 195 (1996) (sufficient evidence existed to establish criminal conspiracy between defendant and codefendant to commit armed robbery, where defendant knew coconspirator possessed a gun, defendant informed coconspirator that victims were wearing jewelry, defendant surmised that robbery was about to occur, defendant approached victims and created diversion by asking for cigarette, defendant positioned himself against car door, trapping victim inside while robbery occurred, defendant did not take advantage of opportunities to flee, defendant's debt to coconspirator's friend was relieved through his participation in robbery, and defendant was promised $50 to keep quiet).

Accordingly, there is no merit to this allegation of error.

II.     Were the convictions against the weight of the evidence?

In his second allegation of error Maines argues the weight of the evidence did not support the guilty verdicts in the following respects: (1) that he was present at the scene or otherwise an actor/accomplice in any of the offenses charged in docket 1919; (2) that the scope

of the conspiracy charged in Count 1 of 1919 included the infliction or attempt to inflict serious bodily injury and thereby encompassed the offense of robbery; and (3) that he was present at the scene or otherwise an actor/accomplice in any of the offenses charged in Count 3 and 4 of 0774.

It is well settled that

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Our Supreme Court has explained that appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. *Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner.* A new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. Stated another way, and as the trial court noted, this Court has explained that the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

Commonwealth v. Dupre, 866 A.2d 1089, 1101-02 (Pa. Super. 2005)(quoting Commonwealth v. Sullivan, 820 A.2d 795, 805-806 (Pa. Super. 2003)(in turn quoting Commonwealth v. Widmer, 560 Pa. 308, 744 A.2d 745, 751-752 (2000))) (emphasis in original). The question a trial court must answer, in the sound exercise of its discretion, is whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." Sullivan, at 806 (citing Widmer, *supra*).

Because a trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. Widmer, at 321, 744 A.2d at 753. "A trial court's exercise of discretion in finding that a verdict is or is not against the weight of the evidence is 'one of the least assailable

reasons for granting or denying a new trial.' " Id. As noted above it is well settled that a court cannot substitute its judgment for that of the trier of fact. Commonwealth v. Holley, 945 A.2d 241, 246 (Pa. Super. 2008). Further, the finder of fact was free to believe the witnesses for both the Commonwealth and Maines in whole, in part, or not at all. Commonwealth v. Griscavage, 512 Pa. 540, 517 A.2d 1256 (1986).

Relative to Maines' first two weight of the evidence arguments, as discussed above the testimony presented in this matter amply supports the jury's verdict as to the charges at docket 1919. As developed above the evidence established that Maines was not only present at the scene but an active participant in the crimes, indeed the evidence revealed that but for Maines neither Meyer nor Schroll would have engaged in any of the actions that occurred on February 23, 2013. The nature of the verdict is such that the jury obviously gave credit to Meyer's testimony and there was nothing that occurred during trial to give this jurist cause to question that decision by the fact finder. Further, the verdicts rendered by the jury after careful deliberations over approximately six hours do not shock the court's sense of justice. N.T. 10/10/14 pp. 100-121 (reflecting deliberations began at 12:34 p.m. and verdicts were returned at 6:40 p.m.). See, Commonwealth v. Gonce, 320 Pa. Super. 19, 466 A.2d 1039 (1983) (in prosecution for robbery and conspiracy, jury's guilty verdict was not contrary to weight of the evidence, which included testimony by coconspirators that defendant was involved in planning and executing the crime and drove car transporting them to and from scene).

In his third argument Maines contends that the weight of the evidence does not support his conviction on Count 3 –Terroristic Threats and Count 4 – Intimidation of Witnesses or Victims of docket 0774 as the evidence does not establish that he was present at the scene or otherwise was an actor in these offenses.

As to Count 3 –Terroristic Threats, to obtain a conviction for terroristic threats, in relevant part, the Commonwealth must prove that Maines: (1) communicated, either directly or indirectly, a threat to commit any crime of violence and (2) did so with intent to terrorize another. 18 Pa. C.S. § 2706(a)(1) (West 2015). Maines has limited his challenge to whether the weight of the evidence establishes that he was present at the scene or was an actor in the commission of this offense.

Cawthorne testified that Maines appeared at his residence three times asking about his package. N.T. 10/7/14 pp. 128, 132-33, 137, 171-75. Cawthorne testified that on the third visit Maines said, "I know the box was delivered. If I don't have my shit by Monday you're going to have trouble like you've never seen." Id. p. 137. Darr testified that she saw Maines at the residence on all three visits. N.T. 10/8/14 pp. 104-08. By the nature of the verdict the jury found this testimony credible and this evidence is sufficient to prove that Maines was present at Cawthorne's residence. Accordingly, there is no merit to Maines' argument that the verdict is against the weight of the evidence, as it does not place him at the scene, where the testimony established his presence at the scene on three occasions.

As to Count 4 – Intimidation of Witnesses, Maines again argues that the verdict here is against the weight of the evidence, as the evidence does not establish that he was present at the scene or otherwise was an actor in committing this offense. To prove Maines guilty of this offense the Commonwealth had to prove: (1) that Maines intimidated or attempted to intimidate, a witness into refraining from informing or reporting to a law enforcement officer, prosecuting official, judge concerning information relating to the commission of a crime, and (2) that the he did so with the intent to, or with the knowledge that his conduct would, obstruct,

impede, impair, prevent, or interfere with the administration of criminal justice. 18 Pa. C.S. § 4952 (a)(1) (West 2015).

Again, Maines has limited his challenge to whether the weight of the evidence establishes that he was present at the scene or was an actor in the commission of this offense. As discussed above, both Cawthorne's and Darr's testimony places Maines at Cawthorne's residence on three separate occasions on February 23rd. This evidence, which by the nature of the verdict the jury found credible, is sufficient to support a conclusion that Maines was present at the scene. Accordingly, there is no merit to this issue.

As there is no merit to any allegation of error, Maines appeal should be dismissed and the jury's verdict should be affirmed.

Respectfully submitted,

_____
Norman A. Krumenacker, III, Judge

August 19, 2015

IN THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, PENNSYLVANIA

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | CRIMINAL DIVISION |
| v. | CP-11-CR-0000774-2013 |
| JASON MAINES a/k/a JASON ALLEN MAINES. | CP-11-CR-0001919-2013 |
| Defendant. | |

## CONCISE STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

AND NOW, comes Defendant, by and through his undersigned counsel, and, pursuant to and in accordance with Pa.R.A.P. 1925(b), submits the following issue(s) to be pursued on appeal:

(1) Whether the convictions at CP-11-CR-0001919-2015 are unsupported by sufficient evidence that Defendant: (A) was present at the scene or otherwise an actor/accomplice in the commission of any of those offenses and/or (B) that the scope of the conspiracy included the infliction of, or an attempt to inflict, serious bodily injury and thereby encompassed the offenses of Robbery and Aggravated Assault of which Defendant was convicted?

(2) Whether Defendant's convictions were against the weight of the evidence in the following respects: (A) he was present at the scene or otherwise an actor/accomplice in the commission of any of the offenses at CP-11-CR-0001919-2013; (B) the scope of the conspiracy at CP-11-CR-0001919-2013 included the infliction of, or an attempt to inflict, serious bodily injury and thereby encompassed the offenses of Robbery and Aggravated Assault of which Defendant was convicted at that case; and/or (C) he was present at the scene or otherwise the actor in the commission of the offenses at Counts 3 and 4 at CP-11-CR-0000774-2013?

WHEREFORE, Defendant respectfully requests that Superior Court grant relief as follows:

(1) vacate the December 30, 2014 Judgment of Sentence of the Court of Common Pleas of Cambria County at CP-11-CR-0001919-2013;

(2) discharge at all counts at CP-11-CR-0001919-2013; and

(3) such other appropriate relief under the circumstances.

Respectfully submitted,

_____
Steven C. Townsend, Esquire
Attorney for Defendant

EXHIBIT C

# IN THE SUPERIOR COURT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,
Appellee,

v.

JASON MAINES a/k/a JASON ALLEN
MAINES,
Appellant.

WESTERN DISTRICT

NO. 953 WDA 2015

## PROOF OF SERVICE

I certify I served, in accordance with Pa.R.A.P. 121(a)-(c) and 2187(a)(3), the

foregoing Brief for Appellant on September 25, 2015 in the manner set forth below

upon the following persons:

Prothonotary, Western District
Superior Court of Pennsylvania
600 Grant Building
310 Grant Street
Pittsburgh, PA 15219

(original & 6 copies by
personal delivery)

Scott M. Lilly, Esquire
Deputy District Attorney
Office of the District Attorney of Cambria County
200 South Center Street
Ebensburg, PA 15931

(2 copies by First Class U.S.
Mail, postage prepaid)

Steven C. Townsend, Esquire
Attorney for Appellant