J-S38043-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SHELDON LINDLEY KROCK | : | |
| | : | |
| Appellant | : | No. 2668 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 26, 2018
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0001295-2017

BEFORE: OTT, J., DUBOW, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.: **FILED AUGUST 06, 2019**

Appellant, Sheldon Lindley Krock, appeals from the aggregate judgment of sentence of 16 to 32 years of confinement, which was imposed, after a trial, for: three counts of endangering welfare of children – parent, guardian or other person commits an offense ("EWOC"); 11 counts of recklessly endangering another person ("REAP"); one count of driving under the influence of alcohol or controlled substance ("DUI") – general impairment, incapable of safely driving (first offense); one count of DUI -- high rate of alcohol, blood alcohol concentration at least 0.10% but less than 0.16% (first offense); and one count each of speeding, careless driving, and reckless driving.[1] We affirm.

---

[1] 18 Pa.C.S. §§ 4304(a)(1) and 2705 and 75 Pa.C.S. §§ 3802(a)(1), 3802(b), 3361, 3714(a), and 3736(a), respectively.

* Retired Senior Judge assigned to the Superior Court.

In its memorandum opinion dated August 28, 2018, the trial court fully and correctly set forth the relevant facts of this case:

[O]n August 19, 2016, at approximately 11:40 P.M., Michael Johnson, Sr., a tractor trailer driver who hauls cement and makes daily trips to Keystone Cement located in Bath, Northampton County, Pennsylvania, was traveling westbound on Route 22.[1] There was construction on the highway, and an associated right lane closure that was posted on the roadway.[2] [Commonwealth Exhibits 2, 35 (photographs of road signage); N.T., 6/19/2018, at 57]. Therefore, Mr. Johnson moved his tractor trailer to the left lane of travel. At that time, a red Chevrolet Cruz[e] sedan was in front of Mr. Johnson's tractor trailer. He witnessed a red Ford F-150, dual-cab pick-up truck and a couple of other vehicles pass him in the right lane of travel that was going to end as a result of the road work. Suddenly, the red Ford F-150 pick-up truck moved into the left lane of travel and struck the side of the 2014 red Chevrolet Cruz[e].[3] The red Ford F-150 pick–up truck consequently flipped over and pushed the Chevrolet Cruz[e] into the concrete wall barrier.[4] C[ommonwealth] Ex. 39. The Ford F-150 pick-up truck rolled over several times and came to rest on the roof.

[1] Route 22 is a divided, four (4) lane highway.

[2] The traffic was light and the night was clear; consequently, the signs were clearly visible. The sign read, "Warning. Right lane closed ahead." The speed limit was 45 mph in the construction zone.

[3] Prior to the red Ford F-150 pick-up truck moving into the left lane of travel, Mr. Johnson did not notice anything unusual about it.

[4] The Chevrolet Cruz[e], occupied by William and Traci Fritz, sustained heavy damage. Mrs. Fritz was the operator of the vehicle. Their red Chevrolet Cruz[e] was shoved into the concrete median by the Ford F-150 pick-up truck. The passenger side door was crushed, and consequently they had to exit the vehicle through the driver's side door. Mrs. Fritz was sore, stiff, and her ribs hurt. She was not taken to the hospital as a result of the injuries that she sustained. Similarly, Mr. Fritz suffered a bruise on his leg, but did not go to the hospital for treatment.

After the collision, Mr. Johnson heard children yelling from the red Ford F-150 pick-up truck, so he exited his tractor trailer and ran over to the rear of the pick-up truck to render assistance. There were three (3) children in the Ford F-150 pick-up truck, appearing to range in approximate age from two (2) to seven (7) years old. . . . At approximately 11:40 P.M., Trooper Joseph Mitzak of the Pennsylvania State Police, Bethlehem Barracks, was requested to respond in full uniform and a marked police cruiser to this crash site on Route 22 westbound near the Fullerton Avenue exit, Hanover Township, Lehigh County, Pennsylvania. Upon arriving, Trooper Mitzak observed a chaotic scene. [Commonwealth Exhibits 1–35 (photographs)]. Specifically, there were four (4) vehicles involved in the crash, including a red Ford F-150 pick-up truck that was on its roof facing in a southern direction, a Chevrolet Cruz[e] occupied by William and Traci Fritz, a Mazda 3,[5] and a Volvo.[6] [Commonwealth Exhibits 40–45 (photographs showing damage to the F-150, where the roof collapsed, and to the Volvo S40); N.T., 6/19/2018, at 68-70.]. At the time that Trooper Mitzak arrived on scene, two (2) people remained inside the Ford F-150 pick-up truck: [Appellant, who was the] registered owner of the Ford F-150 pick-up truck[,] and a female, Renee Tenasse.[7] [Appellant] was trapped in the driver seat of the vehicle.[8] In addition, three (3) young children were sitting on the berm of the highway near the guardrail.[9] Trooper Mitzak engaged [Appellant] in general conversation in an effort to keep him calm before the extrication process began. [Appellant] stated that he was the driver of the vehicle. Ultimately, [Appellant] was extricated from the vehicle with the help of members of the Han-Le Company Fire and Rescue,[10] the Bethlehem EMS, and the Pennsylvania State Police. Paramedic Jason Hadinger of the Bethlehem EMS transported [Appellant] to the Lehigh Valley Hospital - Cedar Crest Campus for medical attention. When Paramedic Hadinger was tending to [Appellant]'s medical care, he detected a strong odor of alcohol emanating from his person.[11] Upon [Appellant]'s arrival at the Lehigh Valley Hospital trauma unit, Michelle Greis, R.N., drew blood from [Appellant] in accordance with hospital policy, as all trauma patients are subjected to a blood draw. [Appellant]'s blood was drawn at 12:34 A.M. on August 20, 2016. [Commonwealth Exhibit 46 (blood alcohol and toxicology report – chain of custody)]. This blood draw is part of a kit in which nine (9) tubes of blood are drawn. The medical purpose for the blood draw is to determine if there is alcohol or controlled substances in a patient's system which could mask an injury. Two (2) of the nine (9) tubes were

set aside in the event that blood was needed for legal purposes, and was not immediately tested.

[5] The white Mazda was operated by Corinne Salter, and her five and a half (5 ½) year old daughter was a rear seat passenger in the vehicle at the time of the crash. This vehicle sustained heavy damage, as the Ford F-150 pick-up truck landed on the trunk of her car. Ms. Salter blacked out briefly, and then she regained consciousness. She had a sore hip and knee, for which she sought medical treatment. Similarly, her young daughter had cuts on her legs from the broken glass from the windows, and both went to Lehigh Valley Hospital - Muhlenberg Campus for medical attention.

[6] The Volvo S40, which was operated by teenager Kaylyn Simpson, a student at Penn State University, sustained damage to the rear of the vehicle. The Volvo S40 was rear-ended by the white Mazda 3 in this chain reaction crash. Ms. Simpson was shaken up, but did not require any medical treatment.

[7] Robert Pierce, Andre Johnson, and Renee Tenasse were passengers in [Appellant]'s vehicle, as were Ms. Tenasse's three (3) minor children. Ms. Tenasse was partially ejected from the front passenger side door, as her upper body was in the pick-up truck, but her legs were sticking out of the pick-up truck. She was unresponsive, unconscious, and barely [breathing] when the Pennsylvania State Police arrived on scene. [N.T., 6/19/2018, at 39.] Corporal Jason Troutman of the Pennsylvania State Police attempted to pull Ms. Tenasse out of the vehicle. He had to crawl inside the Ford F-150 pick-up truck to get her out, along with the assistance of other Pennsylvania State Troopers on scene. Corporal Troutman performed CPR on Ms. Tenasse to try to resuscitate her to no avail.

Selvin Allonzo, a paramedic with the Cetronia Ambulance Company, responded to the scene and provided medical care to Mr. Robert Pierce . . . whose right lower leg was injured, as it had been slightly trapped under the flatbed of the Ford F-150 pick-up truck. Mr. Pierce also complained of lower back pain. Paramedic Allonzo stabilized the leg fracture and Mr. Pierce's neck so that he could be transported to the trauma unit of Lehigh Valley Hospital - Cedar Crest Campus. . . .

Mr. Pierce was uncooperative, as he was concerned about Ms. Tenasse.

Mr. Pierce was admitted to Lehigh Valley Hospital and remained there for three (3) days. He had three (3) surgeries on his right ankle and still cannot walk without the aid of crutches. The ankle had become infected due to the pins that were placed therein to stabilize it, and therefore it keeps leaking. He was hospitalized in Dubois Hospital in western Pennsylvania and transferred to Pittsburgh Hospital, where he remained for one (1) month. He had surgery on his ankle and then he was transferred to a nursing home for rehabilitation purposes for one (1) month.

All passengers in [Appellant]'s vehicle were injured, including Ms. Tenasse who succumbed to her injuries and was pronounced dead at the scene. Her cause of death was blunt force trauma to the head and neck as a result of the car accident. [Commonwealth Exhibit 37 (autopsy report for Renee Tenasee from Lehigh County Coroner's Office and Forensics Center)]. The toxicology report indicated that Ms. Tenasse did not have any alcohol or drugs present in her system. [*Id.*]

[8] [Appellant] was still strapped in with his seatbelt.

[9] The three (3) children of Renee Tenasse were all rear seat passengers in the red Ford F-150 pick-up truck. They did not sustain any significant injuries.

[10] Garren Knoll, the Volunteer Assistant Chief of the Han-Le Company Fire and Rescue, assisted in stabilizing the Ford F-150 pick-up, and the cutting apart of the metal between the Ford F-150 pick-up truck and the white Mazda 3 in order to allow for the extrication of [Appellant] from the vehicle. In addition, Paramedic Nicholas Marlowe, another volunteer with the Han-Le Company Fire and Rescue, relieved Corporal Troutman and tried to resuscitate Ms. Tenasse. Paramedic Marlowe also assisted in the extrication of [Appellant] from the vehicle.

[11] During the transport, [Appellant] stated to Paramedic Hadinger that he had consumed six (6) beers

earlier that evening.[2 Appellant] also told Paramedic Hadinger that he became distracted when two (2) of the passengers in his vehicle had an argument, and he lost focus.

Approximately two (2) to three (3) hours after the accident, at 2:40 A.M., Trooper Mitzak applied for and obtained a search warrant for [Appellant]'s blood in order to obtain a blood alcohol content analysis. At 3:05 A.M. on August 20, 2016, a separate blood draw was performed at Lehigh Valley Hospital - Cedar Crest Campus. The results of this blood draw revealed a blood alcohol content of .06%. Trooper Mitzak was unaware that blood had previously been drawn from [Appellant] by Michelle Greis, R.N.

Additionally, Trooper Mitzak had an opportunity to speak with [Appellant] at Lehigh Valley Hospital - Cedar Crest Campus. At that time, Trooper Mitzak advised [Appellant] that he was not in custody and that he did not have to speak with him. Nevertheless, [Appellant] agreed to speak with Trooper Mitzak. [Appellant] told Trooper Mitzak that he had hosted a barbecue at his house in Easton and he had consumed a few alcoholic beverages the evening in question. He also admitted to being the operator of the vehicle and he stated that two (2) of the passengers had an argument in the vehicle before the crash.

On September 8, 2016, Trooper Mitzak applied for and obtained a second search warrant for [Appellant]'s blood that was drawn at 12:34 A.M. on August 20, 2016.[12] [Appellant]'s blood alcohol content at that time was .11%.[13] [Commonwealth Exhibit 47 (laboratory analysis form for blood alcohol/controlled substance).]

[12] Trooper Mitzak did not request that this blood be drawn.

[13] Nadine Koenig, an expert in the area of toxicology and toxicological chemistry, opined that alcohol can cause people to have slower reactions, poor judgment, visual impairment, and lack of coordination.

Trooper William Hoogerhyde of the Pennsylvania State Police, Troop M, Fogelsville Barrack, an expert in the area of Accident Reconstruction, arrived on scene around 1:06 A.M. in order to

_____

[2] During trial, Pierce testified that he had seen Appellant drinking beer earlier that day. N.T., 6/19/2018, at 136; Trial Court Opinion, filed August 28, 2018, at 9.

perform an accident reconstruction. [Commonwealth Exhibit 36 (Trooper Hoogerhyde's curriculum vitae)]. Based on his analysis of the scene, as well as having performed a mechanical inspection of the vehicles involved, Trooper Hoogerhyde found that there was no defect in the Ford F-150 pick-up or red Chevrolet Cruz[e] that would have contributed to the collision. He opined that the crash occurred when the Ford F-150 pick-up truck moved into the left lane of travel and struck the red Chevrolet Cruz[e], pushing that vehicle into the concrete barrier. The Ford F-150 pick-up continued to move forward, hit the barrier, and rolled on the right side, and flew up in the air, impacting the rear of the white Mazda 3. As a result of this impact, the white Mazda 3 struck the Volvo.

Trial Court Opinion ("TCO"), filed August 28, 2018, at 4-9 (some formatting).

At trial, Pierce testified that, for about 15 to 20 minutes prior to the collision, Appellant was "swerving in between lanes" and "going pretty fast[,]" causing Pierce to "yell[] out, . . . 'Can you stop or pull over, or let Renee [Tenasse] drive[?]'" N.T., 6/19/2018, at 138-39; **see also** TCO, August 28, 2018, at 9. When asked if Tenasse had drunk any alcohol that evening, Pierce answered negatively. N.T., 6/19/2018, at 138; **see also** TCO, August 28, 2018, at 6 n.7 & 9. He continued that, immediately prior to the collision, he heard Tenasse say to Appellant, while she was seated in the front passenger seat of Appellant's car, that "she don't want to die, if you can pull over." N.T., 6/19/2018, at 139; **see also** TCO, August 28, 2018, at 9.

Trooper Hoogerhyde, as an expert in accident reconstruction, opined "[t]hat the pickup truck was actually traveling in the right lane of westbound [Route] 22[,]" while the other vehicles involved in the collision – the Chevrolet Cruze, the Mazda 3, and the Volvo S40 – "were traveling in the left lane of

[Route] 22[.] . . . For unknown reasons the pickup truck went into the left lane." N.T., 6/19/2018, at 165.

On June 21, 2018, a jury convicted Appellant of the aforementioned EWOC, REAP, and DUI charges, and the trial court convicted Appellant of the summary counts of speeding, careless driving, and reckless driving. The trial court ordered a pre-sentence investigation report, which was completed on July 23, 2018. TCO, August 28, 2018, at 15. Appellant was sentenced three days later.[3]

On August 3, 2018, Appellant filed post-sentence motions, including a motion for a new trial claiming that the verdict was against the weight of the evidence and a motion for reconsideration of sentence. Post-sentence Motions, 8/3/2018, at ¶¶ 23-44. On August 28, 2018,[4] the trial court denied Appellant's post-sentence motions and explained its reasoning in an accompanying opinion. Order, 8/28/2018; TCO, August 28, 2018, at 2-17.

On September 13, 2018, Appellant filed this timely direct appeal pursuant to Pa.R.A.P. 902 and 903. The next day, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days of the date of the order. The

---

[3] Appellant's "minimum sentences were within the standard range of the guidelines, and the maximum sentences were set within the statutory maximum." TCO, filed August 28, 2018, at 13.

[4] The order was dated August 27, 2018, but filed with the Clerk of Judicial Records and docketed on August 28, 2018.

order warned: "Any issue not properly included in the concise statement of the errors complained of on appeal timely filed and served shall be deemed waived." Order, 9/14/2018.

On October 1, 2018, Appellant filed his statement of errors complained of on appeal, reproduced in its entirety below:

> AND NOW, comes the Defendant/Appellant, SHELDON LINDLEY KROCK, by and through Counsel, Michael E. Brunnabend, Esquire, and respectfully submits this Statement of Matters Complained of on Appeal pursuant to Pa. R.A.P. 1925(b), and pursuant to the Court's Order requesting the same, as follows:
>
> 1. The Court erred by failing to grant the Defense request to suppress from using the blood test results which were taken without consent or appropriate probable cause. The Defendant incorporates by reference all other basis for suppression as are also set forth in the Defendant's Pretrial Motion to Suppress, as if it is set forth more fully herein.
>
> 2. The Court erred by permitting the pre-accident statements of the decedent passenger to be entered as substantive evidence through the testimony of the third-party passenger.
>
> 3. The Court erred in permitting various photos to go out with the jury on request of the Commonwealth even though the photos were never published to the jury during Trial nor was cross-examination allowed or occurred to distinguish the limited purpose for which the photos could be used.
>
> 4. The verdict of the jury was not supported by sufficient evidence to prove that the defendant's actions or inactions were the cause of the accident or that the accident was the direct result of the defendant's actions or state of mind.
>
> 5. The evidence was insufficient as to the Endangering the Welfare of Children as there was no evidence presented to support the legal or factual requirement that the defendant was the guardian of, had the control over the welfare of the children, or was supervising them so as to sustain a change of Endangering the Welfare.

6. The verdict of the jury was against the weight of the evidence for all of the reasons as are set forth in paragraph 4 and paragraph 5 as if those factual or legal basis are more fully set forth herein.

Concise Statement of Matters Complained on Appeal ("Rule 1925(b) Statement"), 10/1/2018, at 1-2. On October 3, 2018, the trial court entered its opinion pursuant to Pa.R.A.P. 1925(a).

Appellant now presents the following issues for our review:

A.      Whether the evidence was sufficient to sustain Appellant's convictions for [REAP] and [EWOC]?

B.      Was the verdict against the weight of all the evidence in regards to proof of whether or not the [Appellant] was properly convicted of [REAP] and [EWOC]?

C.      Whether the trial court erred when it permitted the entry of the statement of the decedent passenger through another witness deeming it to be an[] excited utterance?

D.      Whether the [trial] court abused its discretion in imposing manifestly excessive and unreasonable sentences the most serious of which were at the statutory maximum limit and all were imposed consecutively when the court failed to consider any significant mitigating factors, failed to apply and review all the necessary factors as set forth in 42 Pa.C.S.A. § 9721(b) and 42 Pa.C.S.A. § 9781(c) and (d) or otherwise failed to set forth appropriate reasons for its decision that the maximum sentences were the only appropriate sentences?

Appellant's Brief at 9-10 (trial court's answers and unnecessary capitalization omitted) (some additional formatting).

## Sufficiency of the Evidence

Appellant "believes that his convictions for the multiple counts of [REAP] and [EWOC] were not supported by sufficient evidence to permit those convictions." Appellant's Brief at 24.

This Court's standard for reviewing sufficiency of the evidence claims is as follows:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> ***Commonwealth v. Rodriguez***, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting ***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa.Super. 2012)).

***Commonwealth v. Izurieta***, 171 A.3d 803, 806 (Pa. Super. 2017) (internal brackets omitted).

*REAP*

Appellant was convicted of REAP pursuant to 18 Pa.C.S. § 2705: "A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

> A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree

that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Id.* § 302(b)(3). Our law defines "[s]erious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 2301.

Preliminarily, we note:

[I]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Pa.R.A.P. 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. *See* [] Pa.R.A.P. 1925(b)(4)(ii) ("The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge."). Such specificity is of particular importance in cases where, as here, Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. Therefore, when an appellant's 1925(b) statement fails to specify the element or elements upon which the evidence was insufficient, the sufficiency issue is waived on appeal.

*Commonwealth v. Ellison*, 2019 PA Super 193, *14-*15 (filed June 20, 2019) (internal brackets and ellipsis and some internal citations and quotation marks omitted).

Only Paragraphs 4 and 5 of the 1925(b) Statement, reproduced in its entirety above, refer to the sufficiency of the evidence. Rule 1925(b) Statement, 10/1/2018, at 2 ¶¶ 4-5. In Paragraph 4, Appellant not only failed to specify which elements he was challenging, he also failed to specify which conviction he was challenging. *Id.* at ¶ 4. Paragraphs 4 and 5 of the Rule

1925(b) Statement made no explicit mention of REAP, let alone stating with specificity the element or elements that Appellant was alleging were not proven to support his 11 REAP convictions. *Id.* at ¶¶ 4-5. Not only does Appellant's Rule 1925(b) Statement not explicitly reference REAP, no language from 18 Pa.C.S. § 2705, § 302(b)(3), or § 2301, defining the elements of REAP, is included in the Rule 1925(b) Statement, either. *See* Rule 1925(b) Statement, 10/1/2018, at 2 ¶¶ 4-5. We thereby find Appellant's challenge to the sufficiency of the evidence to find REAP waived on that basis. *See Ellison*, 2019 PA Super 193, *14.

Assuming we interpret the Rule 1925(b) Statement extremely generously, we could consider Appellant's references in Paragraph 4 of his Rule 1925(b) Statement to his "actions" and "state of mind" to be equivalent to the "conduct" and "reckless" elements in 18 Pa.C.S. § 2705, respectively. We thus would find that his sufficiency claim as to his REAP convictions had not been waived, but we would still hold said challenge to be meritless.

Appellant contends that the undisputed fact that he drove under the influence of an intoxicating substance alone cannot establish the element of recklessness for REAP but that there must be "other tangible indicia of unsafe driving[.]" Appellant's Brief at 27 (quoting *Commonwealth v. Mastromatteo*, 719 A.2d 1081, 1083 (Pa. Super. 1998)).

Appellant is correct that "[d]riving under the influence of intoxicating substances does not create legal recklessness *per se* but must be accompanied

with other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded." ***Commonwealth v. Hutchins***, 42 A.3d 302, 311 (Pa. Super. 2012) (quoting ***Mastromatteo****,* 719 A.2d at 1082)).

> For example, in ***Mastromatteo***, police observed the defendant driving in a very slow fashion and, while she never came close to other vehicles, she crossed the centerline on several occasions. ***Id.*** at 1082. As a result, the police initiated a traffic stop for suspicion of drunk driving. ***Id.*** It was then discovered that the defendant had consumed alcohol and marijuana, had a glass in the front seat, which appeared to contain alcohol, and had her young son in the car with her. ***Id.*** at 1081–1084. The defendant was convicted of both DUI and REAP. ***Id.*** at 1081.
>
> On appeal, we affirmed the defendant's judgment of sentence for DUI, but reversed the REAP conviction. ***Id.*** at 1084. In that matter we noted that, while we do not condone driving while intoxicated, "undoubtedly there are certain drivers who will exhibit safer driving conduct while legally intoxicated than certain drivers do when they are sober." ***Id.*** at 1083 n. 4. Rather, we explained, "[w]hat is material is actual reckless driving or conduct [other than just intoxication] ... for it is this conduct which creates the peril in question." ***Id.*** at 1083. Because in ***Mastromatteo*** there was no evidence of reckless driving or conduct, other than the defendant's intoxication, we were constrained to reverse defendant's REAP conviction. ***Id.*** at 1084.

***Id.***

In the current action, in addition to evidence of Appellant's intoxication, Pierce testified that, for about 15 to 20 minutes prior to the collision, Appellant was "swerving in between lanes" and "going pretty fast[,]" causing Pierce to "yell[] out, . . . 'Can you stop or pull over, or let Renee drive,'" as she had not consumed any alcohol that evening. N.T., 6/19/2018, at 138-39; ***see also*** TCO, August 28, 2018, at 6 n.7 (citing Commonwealth Exhibit 37) & 9. Pierce

further testified that he heard Tenasse say "she don't want to die, if you can pull over." N.T., 6/19/2018, at 139; ***see also*** TCO, August 28, 2018, at 9.

The fact that Appellant was swerving between lanes was corroborated by the expert testimony of Trooper Hoogerhyde "[t]hat the pickup truck was actually traveling in the right line of westbound [Route] 22[,]" while the other vehicles involved in the collision – the Chevrolet Cruze, the Mazda 3, and the Volvo – "were traveling in the left lane of [Route] 22[.]" N.T., 6/19/2018, at 165. Accordingly, "the pickup truck" had to have gone "into the left lane" in order to hit the other three vehicles. ***Id.***; ***see also*** TCO, August 28, 2018, at 8.

Hence, unlike in ***Mastromatteo***, 719 A.2d at 1081-84, the evidence admitted at Appellant's trial included "other tangible indicia of unsafe driving to a degree that creates a substantial risk of injury which is consciously disregarded[,]" ***Hutchins***, 42 A.3d at 311, thereby establishing the *mens rea* of recklessness for REAP. ***See*** 18 Pa.C.S. § 2705. Thus, assuming Appellant's claim that the evidence was insufficient to fulfill this element of REAP had been properly preserved, Appellant's Brief at 27, we would still find that it merits no relief.

### *EWOC*

Only Appellant's sufficiency challenge for EWOC was properly preserved for our consideration. Rule 1925(b) Statement, 10/1/2018, at 2 ¶ 5. Appellant was convicted of three counts of EWOC pursuant to 18 Pa.C.S.

§ 4304(a)(1): "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support."

> This Court has employed a three-prong test to determine whether the Commonwealth's evidence is sufficient to prove that a defendant knowingly violated a duty of care under Section 4304(a)(1): (1) the accused must be aware of his or her duty to protect the child; (2) the accused must be aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused either must have failed to act, or must have taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Sebolka*, 205 A.3d 329, 337 (Pa. Super. 2019) (citation omitted) (some formatting).

Appellant concedes "that he had been drinking and that he was above the legal limit at the time of the accident" and that he "was certainly aware of his duty to the children but does not believe that the evidence sufficiently proved that he would[ ha]ve been aware that the children were in circumstances that could threaten their physical well-being." Appellant's Brief at 27, 30. In other words, Appellant is only challenging the *mens rea – i.e.*, that he must "**knowingly** endanger the welfare of the child[.]" 18 Pa.C.S. § 4304(a)(1) (emphasis added). However, in his Rule 1925(b) statement, Appellant challenged a different element of EWOC – *i.e.*, whether he "was the guardian of, had the control over the welfare of the children, or was supervising them so as to sustain a cha[r]ge of Endangering the Welfare."

- 16 -

Rule 1925(b) Statement, 10/1/2018, at 2 ¶ 5.   Appellant hence failed to preserve a challenge to the sufficiency of the evidence to support the finding of a "knowingly" *mens rea* for the EWOC charges, and this claim is therefore waived.   Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived"); **Ellison**, 2019 PA Super 193, *14-*15.

## Weight of the Evidence

Next, Appellant contends "that the verdict was against the weight of all the evidence and as such should not be permitted to survive."   Appellant's Brief at 31.[5]

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion.   A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice.   The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.   The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility.   We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

**Commonwealth v. Roane**, 204 A.3d 998, 1001 (Pa. Super. 2019) (internal citations and quotation marks omitted).

In the current appeal,

> [Appellant] believes that a review of the evidence will not support a finding that [he] acted in such a manner as to violate his duty

---

[5] We note that the remedy for a successful challenge to the weight of the evidence is a new trial, not a judgment of acquittal.   **Commonwealth v. Widmer**, 744 A.2d 745, 751-52 (Pa. 2000).

of care for the children.  Even if Mr. Pierce['s] testimony is believed in full it is still not enough to support a belief that [Appellant] was driving recklessly or in such a disregard for those children by the safe operation of the motor vehicle.  In cases where there was evidence of some reckless driving the seriousness and dangerousness of that conduct far exceeds [Appellant]'s actions on that evening.  *Compare Commonwealth v*[]*. Jeter*, 2007 PA Super 328, 937 A.2[]d. 466 (PA. Super. 2007) or *Commonwealth v*[]*. Sullivan*, 2004 PA Super 481, 864 A.2[]d. 1246 (PA. Super. 2004).

Appellant's Brief at 32 (some formatting).

Nevertheless, this claim is not a challenge to the weight of the evidence; by alleging that the evidence was "not enough," Appellant is insisting that the evidence was insufficient.  That is to say, Appellant is conflating challenges to the weight of the evidence with challenges to the sufficiency of the evidence.  For example, Appellant is not challenging Pierce's credibility, which would be a potential basis for a weight challenge.  *See Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa. Super. 2003) ("A sufficiency of the evidence review . . . does not include an assessment of the credibility of the testimony offered by the Commonwealth.  Such a claim is more properly characterized as a weight of the evidence challenge." (citation omitted)).  Instead, Appellant acknowledges that Pierce's testimony could be believed in full.  Appellant's Brief at 32.  Additionally, in the first case cited by Appellant, *Commonwealth v. Jeter*, 937 A.2d 466 (Pa. Super. 2007), the appellant "raise[d] one issue on appeal:  whether the evidence at trial was **sufficient** to support his conviction for reckless driving[,]" *id.* at 467 (emphasis added); accordingly, the case involved a sufficiency challenge, not a weight challenge.  As for the

second case referenced by Appellant, ***Commonwealth v. Sullivan***, 864 A.2d 1246 (Pa. Super. 2004), the appellant therein asserted that "his convictions were against the weight of the evidence[,]" ***id.*** at 1247, but this Court found his weight of the evidence claims waived, ***id.*** at 1248, "because none of [the a]ppellant's cited authority addresses any weight of the evidence issues. Rather, the cited authority addresses *sufficiency* of the evidence claims." ***Id.*** at 1249 (emphasis in original) (citing ***Commonwealth v. Mercado***, 649 A.2d 946, 954 (Pa. Super. 1994) (stating that failure to provide support for an issue may result in waiver of the claim)). Consequently, instead of supporting Appellant's weight claim, ***Sullivan*** emphasizes Appellant's failure to appreciate the difference between weight and sufficiency claims, as his cited authority likewise fails to address any weight of the evidence issues.

Appellant's claim is more properly characterized as a sufficiency of the evidence challenge, but he has once again failed to specify which convictions or elements thereof he is contesting, thereby waiving any claim. ***Ellison***, 2019 PA Super 193, *14-*15.

To the extent that we can consider Appellant's references to "a finding that [he] acted in such a manner as to **violate his duty of care** for the children" relate to his EWOC convictions, ***compare*** Appellant's Brief at 32 (emphasis added) ***with*** 18 Pa.C.S. § 4304(a)(1) (". . . endangers the welfare of the child by **violating a duty of care**, protection or support" (emphasis added)), Appellant conceded elsewhere in his brief to this Court that he "was

certainly aware of his duty to the children[,]" Appellant's Brief at 30, and has otherwise failed to develop his claim. Neither of the cases cited by Appellant -- **Jeter**, 937 A.2d 466, and **Sullivan**, 864 A.2d 1246 -- concern EWOC convictions.[6] The failure to support an argument with pertinent authority is a violation of our briefing rules which results in waiver of the unsupported issue. **See, e.g.**, **Commonwealth v. Spotz**, 18 A.3d 244, 281 n.21 (Pa. 2011) (without a "developed, reasoned, supported, or even intelligible argument[, t]he matter is waived for lack of development"); **In re Estate of Whitley**, 50 A.3d 203, 209 (Pa. Super. 2012) ("The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities[; t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority" (internal citations and quotation marks omitted)); **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining appellant's arguments must adhere to rules of appellate procedure, and arguments which are not appropriately developed are waived on appeal; arguments not appropriately developed include those where party has failed to cite any authority in support of contention); **Sullivan**, 864 A.2d at 1248-49 (citing

---

[6] In **Jeter**, 937 A.2d at 467, the appellant was convicted of DUI, false identification to law enforcement, driving on roadways laned for traffic, driving under suspension, and reckless driving. In **Sullivan**, 864 A.2d at 1247, the appellant was convicted of DUI, aggravated assault by vehicle while DUI, REAP, and simple assault.

*Mercado*, 649 A.2d at 954 (failure to provide support for an issue may result in waiver of the claim)) (claims waived, "because none of [the a]ppellant's cited authority addresses" issue raised). Given Appellant's failure to support his argument with citations to the record or to any legal authority, we find any challenge relating to proof of the element of EWOC of a violation of a duty of care to be waived.

To the extent that we can consider Appellant's references to "driving **recklessly** or in such a **disregard** for those children by the safe operation of the motor vehicle" relate to his REAP convictions, *compare* Appellant's Brief at 32 (emphasis added) *with* 18 Pa.C.S. § 2705 ("person commits a misdemeanor of the second degree if he **recklessly** engages . . ." (emphasis added)) *and id.* § 302(b)(3) (". . . when he consciously **disregards** a substantial and unjustifiable risk . . ." (emphasis added)), we have already analyzed the evidence in support of the requisite *mens rea* of recklessness for Appellant's REAP convictions, above, and concluded that the evidence admitted at trial, when viewed in a light most favorable to the Commonwealth as verdict winner, supported a finding of recklessness. *See Izurieta*, 171 A.3d at 806.

Assuming *arguendo* we were to consider Appellant's challenge preserved as a weight claim, we would observe that:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* . . .

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. . . . Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original) (citations omitted); ***see also Roane***, 204 A.3d at 1001 ("When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion."). Appellant makes no claims that the trial court or the jury, as fact-finder, acted unreasonably, misapplied the law, or exhibited partiality, prejudice, or ill will. ***See Clay***, 64 A.3d at 1055. Appellant has thus not raised any genuine weight issue. ***See*** Appellant's Brief at 31-32.

### Evidentiary Ruling – Excited Utterance

Appellant urges this Court to conclude that the trial court erred by allowing Pierce to testify about statements made by Tenasse immediately prior to the collision. Appellant's Brief at 32-35; N.T., 6/19/2018, at 139; TCO, August 28, 2018, at 9.

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. . . . Evidence is admissible if it is relevant—that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact—and its probative value outweighs the likelihood of unfair prejudice.

***Commonwealth v. Clemons***, 200 A.3d 441, 474 (Pa. 2019) (citations omitted).

The trial court allowed Tenasse's statements to be admitted as an exception to the rule against hearsay pursuant to Pa.R.E. 803(2):

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: . . .
>
> > **(2) Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused. When the declarant is unidentified, the proponent shall show by independent corroborating evidence that the declarant actually perceived the startling event or condition.

The official comment to Pa.R.E. 803(2) further explains:

> This exception has a more narrow base than the exception for a present sense impression [pursuant to Pa.R.E. 803(1)], because it requires an event or condition that is *startling*. However, it is broader in scope because an excited utterance (1) need not describe or explain the startling event or condition; it need only *relate* to it, and (2) need not be made contemporaneously with, or immediately after, the startling event. It is sufficient if the stress of excitement created by the startling event or condition persists as a substantial factor in provoking the utterance.

Comment to Pa.R.E. 803(2) (emphasis in original).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Maria L. Dantos, we conclude that Appellant's issue merits no relief. The trial court opinion filed October 3, 2018, comprehensively discusses and properly disposes of that question:

> In the instant case, Ms. Tenasse's statement was spontaneously made while she was emotional due to the unexpected stress of the shocking situation in which she found herself. The Commonwealth established the foundation that the statement was uttered while Ms. Tenasse was overcome by the events, and it was not calculated nor a result of mental reflection. For this reason,

- 23 -

th[e trial c]ourt legally and appropriately allowed this statement to be admitted into evidence.

Trial Court Opinion, filed October 3, 2018, at 4.

*Ergo*, we find that the trial court did not abuse its discretion in permitting Tenasse's statements to be admitted into evidence through Pierce's testimony. ***See Clemons***, 200 A.3d at 474.

### Sentencing

Finally, Appellant challenges the discretionary aspects of his sentence. Appellant's Brief at 35-39. Nonetheless, Appellant did not include any sentencing challenges in his Rule 1925(b) Statement. Hence, this issue is waived. Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").[7]

\* \* \*

Based on the foregoing, Appellant is not entitled to relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

_____

[7] The trial court order directing Appellant to file a concise statement of errors had cautioned: "Any issue not properly included in the concise statement of the errors complained of on appeal timely filed and served shall be deemed waived." Order, 9/14/2018. Thus, the order complied with Pa.R.A.P. 1925(b)(3)(iv) ("The judge's order directing the filing and service of a Statement shall specify: . . . that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived."). Had the order not conformed to Pa.R.A.P. 1925(b)(3)(iv) and, hence, had Appellant not had proper warning that any issues not included in his Rule 1925(b) Statement would be waived, we would have declined to find waiver. ***Commonwealth v. Jones***, 193 A.3d 957, 962 (Pa. Super. 2018).

Judge Ott joins in the memorandum.

Judge Dubow concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/6/19